In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-1774

STACEY MOONEY,

*Plaintiff-Appellant,*

*v.*

ILLINOIS EDUCATION ASSOCIATION, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:18-cv-1439-JBM — **Joe Billy McDade**, *Judge.*

ARGUED SEPTEMBER 20, 2019 — DECIDED NOVEMBER 5, 2019

Before WOOD, *Chief Judge*, and MANION and ROVNER, *Circuit Judges.*

WOOD, *Chief Judge.* Stacey Mooney is a public-school teacher in Eureka (Illinois) Community School District #140. She is not a member of respondent Illinois Education Association ("IEA"), the union that serves as the exclusive representative of her employee unit in collective bargaining with the school district. From the time she started as a public employee until June 2018, the District deducted from her

paycheck and sent to the union a fair-share fee that contributed to the costs incurred by the union in its labor-management activities. Both the Illinois Public Relations Act, 5 ILCS § 315/6, and existing Supreme Court precedent, *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977), authorized this fee arrangement.

That state of affairs came to an end when, in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018), the Supreme Court overruled *Abood* and announced that compulsory fair-share fee arrangements violate the First Amendment rights of persons who would prefer not to associate with the union that represents their employee unit. 138 S. Ct. at 2460. Following *Janus*, state employers in Illinois immediately ceased deducting fair-share fees from the paychecks of nonmembers of public sector unions.

Mooney filed suit in the Central District of Illinois on behalf of herself and a putative class of similarly situated persons, seeking restitution pursuant to 42 U.S.C. § 1983 for the fees that had been deducted from her pay prior to *Janus*. The district court entered judgment for IEA on April 23, 2019, dismissing Mooney's claims with prejudice. In so doing, it joined the consensus across the country concluding that unions that collected fair-share fees prior to *Janus*, in accordance with state law and *Abood*, are entitled to assert a good-faith defense to section 1983 liability.

We heard oral argument on Mooney's case on September 20, 2019, in conjunction with *Janus v. AFSCME*, No. 19-1553. We now affirm the judgment of the district court, largely for the reasons set forth in our opinion of today's date in *Janus v. AFSCME*, No. 19-1553.

We write briefly here to address one difference between the claim brought by Mooney and that brought by Mark Janus. On remand from the Supreme Court, Mr. Janus sought damages pursuant to 42 U.S.C. § 1983 in the amount of the fair-share fees he had paid prior to *Janus*. Mooney, in contrast, insists that she is *not* seeking damages, but instead that she is entitled to the equitable remedy of restitution under the same statute. From the point of view of the union, the two requests are identical: each one seeks a refund of the fees that the plaintiff paid under the *ancien régime*. Mooney, however, believes that there is something special about restitution that is outcome-determinative. Perhaps that is true in some situations, but as we now explain, in substance Mooney is also seeking damages, and so her claim must fail.

Section 1983 allows for remedies either at law or in equity. 42 U.S.C. § 1983 ("… [covered persons] shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"). The district court has discretion to tailor an appropriate remedy for the constitutional violation. See *Bell v. Hood*, 327 U.S. 678, 684 (1946) ("[I]t is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done."); *Lieberman v. Univ. of Chicago*, 660 F.2d 1185, 1193 (7th Cir. 1981) ("[F]ederal courts have the role of providing broad and flexible remedies for violations of federal statutory and constitutional rights.").

Mooney would like us to regard her requested relief as restitutionary in nature. She believes that even if she concedes that a good-faith defense protects the union against a damages award, an equitable demand for restitution cannot be

defeated on good-faith grounds. She argues that there is nothing unfair about requiring the union to return monies that, according to *Janus*, should never have been deducted from her paychecks in the first place. In fact, she concludes, the union would receive a windfall based on its violations of her constitutional rights if no restitution were ordered.

IEA responds that Mooney is simply playing with labels, and that calling her claim equitable, or one for restitution, does not make it so. In substance, IEA says, Mooney's suit is exactly the same as Mr. Janus's: one for damages flowing from a First Amendment violation. The gravamen of Mooney's complaint is that her First Amendment rights were violated by the fair-share requirement because she was compelled to furnish financial support to union activities with which she disagreed.

As have all other district courts that have faced this question, the court here agreed with IEA's position. It concluded that "Plaintiff's claim lies in law rather than equity, and there is consequently no reason to consider whether the good-faith defense applies where the claim is for equitable restitution." See also, *e.g.*, *Carey v. Inslee*, 364 F. Supp. 3d 1220 (W.D. Wash. 2019), appeal pending, No. 19-35290 (9th Cir.); *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996 (D. Alaska 2019), appeal pending, No. 19-35299 (9th Cir.); *Babb v. California Teachers Ass'n*, 378 F. Supp. 3d 857 (C.D. Cal. 2019); *Allen v. Santa Clara Cnty. Correctional Peace Officers Ass'n*, 2019 WL 4302744 (E.D. Cal. Sept. 11, 2019).

The characterization of Mooney's claim presents a legal question on which our consideration is *de novo*. That said, we agree with the district court's analysis, which finds ample support in the law. Indeed, many years ago we held that a

claim for a refund of an agency-fee overcharge under the *Abood* regime was a legal rather than an equitable claim. *Gilpin v. Am. Fed'n of State, Cnty., & Mun. Employees, AFL-CIO*, 875 F.2d 1310, 1314 (7th Cir. 1989) (citing Dobbs, Handbook on the Law of Remedies 224 (1973) ("The damages recovery is to compensate the plaintiff, and it pays him, theoretically, for his losses. The restitution claim, on the other hand, is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep.")). But see *Laramie v. Cnty. of Santa Clara*, 784 F. Supp. 1492, 1501–02 (N.D. Cal. 1992) (labeling a refund of nonchargeable fees under the *Abood* regime as restitution).

Furthermore, as the Supreme Court explained in *Montanile v. Bd. of Trustees of Nat. Elevator Indust. Health Benefit Plan*, 136 S. Ct. 651 (2016), "restitution in equity typically involved enforcement of a 'constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.'" *Id.* at 657 (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 217 (2002)). Where a plaintiff seeks "recovery from the beneficiaries' assets generally" because her specific property has dissipated or is otherwise no longer traceable, the claim "is a *legal* remedy, not an equitable one." *Id.* at 658 (emphasis in original) (internal quotation marks omitted).

Mooney is bringing just such a claim—that is, one against the union's treasury generally, not one against an identifiable fund or asset. She attempts to escape this conclusion with the argument that the entire treasury is an identifiable fund against which she can pursue an equitable lien, but that proves too much. Every defendant will always have a "fund"

consisting of all of its assets, but that is not what the Supreme Court was talking about in *Great-West Life* and *Montanile*. It is not enough that Mooney's fees once contributed to IEA's overall assets. According to *Montanile*, she must point to an identifiable fund and show that her fees specifically are still in the union's possession. 136 S. Ct. at 657–59. This she has not done. Her claim is against the general assets of the union, held in its treasury, and can only be characterized as legal.

In substance, then, Mooney's claim is one for damages. For the reasons we set forth in more detail in *Janus v. AFSCME*, No. 19-1553, decided today, we AFFIRM the district court's judgment.

MANION, *Circuit Judge*, concurring. I concur with the court's ultimate conclusion. I write separately here for the same reason I write separately in *Janus v. AFSCME, Council 31*, No. 19-1553, also decided today. *Janus II* recognized *Abood* gave unions a windfall for 41 years. But *Janus II* also implied unions need not disgorge this windfall.