**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| DALE DANIELSON, a Washington State employee; BENJAMIN RAST, a Washington State employee; TAMARA ROBERSON, a Washington State employee; as individuals, and on behalf of all others similarly situated, | No. 18-36087 |
| *Plaintiffs-Appellants*, | D.C. No. 3:18-cv-05206-RJB |
| v. | OPINION |
| JAY ROBERT INSLEE, in his official capacity as Governor of the State of Washington; DAVID SCHUMACHER, in his official capacity as Director of Washington State Office of Financial Management; AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, COUNCIL 28, AFL-CIO, a labor organization, | |
| *Defendants-Appellees.* | |

Appeal from the United States District Court
for the Western District of Washington
Robert J. Bryan, District Judge, Presiding

Argued and Submitted November 6, 2019
Seattle, Washington

Filed December 26, 2019

Before:  Ronald M. Gould and Jacqueline H. Nguyen,
Circuit Judges, and Gregory A. Presnell,[*] District Judge.

Opinion by Judge Nguyen

## SUMMARY[**]

### Civil Rights

The panel affirmed the district court's dismissal of a claim for monetary relief bought pursuant to 42 U.S.C. § 1983 by public sector employees against their union following the Supreme Court's decision in *Janus v. American Federation of State, County, & Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), which held that the compulsory collection of agency fees by unions violates the First Amendment.

Prior to the Supreme Court's decision in *Janus*, public sector unions around the country relied on the Supreme Court's decision in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), which held that the unions could collect compulsory agency fees from nonmembers to finance their collective bargaining activities, without running afoul of the First and Fourteenth Amendments.  State laws and

---

[*] The Honorable Gregory A. Presnell, United States District Judge for the Middle District of Florida, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

regulations further entrenched the union agency shop into the local legal framework. In 2018, the Supreme Court uprooted its precedent by overturning *Abood.* Immediately thereafter, the defendant Union stopped collecting mandatory fees from nonmembers. Plaintiffs subsequently brought suit seeking, among other things, a refund of all agency fees that were allegedly unlawfully collected from plaintiffs prior to the Supreme Court's decision in *Janus*.

Joining the Seventh Circuit, the panel held that private parties may invoke an affirmative defense of good faith to retrospective monetary liability under 42 U.S.C. § 1983, where they acted in direct reliance on then-binding Supreme Court precedent and presumptively-valid state law. *See Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31*, 942 F.3d 352 (7th Cir. 2019) ("*Janus II*"); *Mooney v. Ill. Educ. Ass'n*, 942 F.3d 368 (7th Cir. 2019). The panel held that the good faith affirmative defense applied as a matter of law, and the district court was right to dismiss plaintiffs' claim for monetary relief.

## COUNSEL

Jonathan F. Mitchell (argued), Mitchell Law PLLC, Austin, Texas; Talcott J. Franklin, Talcott Franklin PC, Dallas, Texas; Eric Stahlfeld, Freedom Foundation, Olympia, Washington; Christopher Hellmich, Hellmich Law Group P.C., Anaheim Hills, California; for Plaintiffs-Appellants.

P. Casey Pitts (argued), Scott Kronland, and Matthew J. Murray, Altshuler Berzon LLP, San Francisco, California; Edward E. Younglove III, Younglove & Coker P.L.L.C., Olympia, Washington; for Defendants-Appellees.

**OPINION**

NGUYEN, Circuit Judge:

"*Stare decisis*—in English, the idea that today's Court should stand by yesterday's decisions—is 'a foundation stone of the rule of law.'" *Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401, 2409 (2015) (quoting *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 798 (2014)). But on rare occasion, even longstanding precedent can be overruled. What happens when the Supreme Court reverses course, but private parties have already acted in reliance on longstanding bedrock precedent?

This question lies at the center of this appeal. For over 40 years, public sector unions around the country relied on the Supreme Court's decision in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), which held that the unions could collect compulsory agency fees from nonmembers to finance their collective bargaining activities, without running afoul of the First and Fourteenth Amendments. State laws and regulations further entrenched the union agency shop into the local legal framework. But in 2018, the Supreme Court uprooted its precedent by overturning *Abood*. In *Janus v. American Federation of State, County, & Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), the Supreme Court held that unions' compulsory collection of agency fees violated the Constitution.

Many public sector unions, including the defendant union here, immediately stopped collecting agency fees. But uncertainty remained as to whether they would be monetarily liable for their pre-*Janus* conduct—conduct that was once explicitly authorized under *Abood* and state law.

Throughout the country, public sector employees brought claims for monetary relief against the unions pursuant to 42 U.S.C. § 1983. Many unions asserted a good faith defense in response. Joining a growing consensus, the district court here ruled in favor of the union. We affirm and hold that private parties may invoke an affirmative defense of good faith to retrospective monetary liability under 42 U.S.C. § 1983, where they acted in direct reliance on then-binding Supreme Court precedent and presumptively-valid state law.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  Factual Background

Plaintiffs are Washington state employees who work within bargaining units exclusively represented by the American Federation of State, County, and Municipal Employees, Council 28, AFL-CIO (the "Union"). Plaintiffs are not members of the Union and object to financing its activities. Nonetheless, until recently, they were required to pay agency fees to the Union. Collection of agency fees from nonmembers was authorized by the governing collective bargaining agreement, by Washington law, and by over four decades of U.S. Supreme Court precedent dating back to *Abood*.

On June 27, 2018, the Supreme Court issued its decision in *Janus*, reversing course on the constitutionality of the traditional agency shop regime. *Janus* overruled *Abood* and held that the mandatory collection of agency fees from objectors violated the First Amendment. 138 S. Ct. at 2486. It is undisputed that, immediately thereafter, the Union stopped collecting mandatory fees from nonmembers.

## B.  Procedural Background

On March 15, 2018, Plaintiffs brought a putative class action pursuant to 42 U.S.C. § 1983 against Jay Inslee, in his official capacity as Governor of Washington; David Schumacher, in his official capacity as Director of the Washington Office of Financial Management; and the Union.  In anticipation of the Supreme Court's decision in *Janus*, Plaintiffs alleged that the imposition of compulsory agency fees violated their constitutional rights under the First and Fourteenth Amendments.  They sought declaratory and injunctive relief, a refund of "all agency fees that were unlawfully collected from Plaintiffs and their fellow class members," and an award of attorney's fees and costs.

In the wake of *Janus* and changes to the Union's practices, the district court determined that the claims against Inslee and Schumacher (the "State Defendants") for declaratory and injunctive relief were moot, and they were dismissed from the case.[1]  Shortly thereafter, the Union filed a motion for judgment on the pleadings or summary judgment.  The Union argued that the claims for declaratory and injunctive relief should be dismissed as moot, as the parallel claims against the State Defendants had been.  The Union further argued that the claim for monetary relief should be dismissed because it had relied in good faith on presumptively-valid state law and then-binding Supreme Court precedent.  The district court granted the Union's motion as to all claims and dismissed the case.  Plaintiffs

---

[1] Plaintiffs sought monetary relief from only the Union, not the State Defendants.

then sought reconsideration of the ruling, which the district court denied. This appeal timely followed.[2]

## II. STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo an order granting summary judgment or judgment on the pleadings. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 975, 978 (9th Cir. 1999).

## III. DISCUSSION

We hold that the district court properly dismissed Plaintiffs' claim for monetary relief against the Union. In so ruling, we join the Seventh Circuit, the only other circuit to have addressed the question before us. *See Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31*, 942 F.3d 352 (7th Cir. 2019) ("*Janus II*"); *Mooney v. Ill. Educ. Ass'n*, 942 F.3d 368 (7th Cir. 2019). We agree with our sister circuit that a union defendant can invoke an affirmative defense of good faith to retrospective monetary liability under section 1983 for the agency fees it collected pre-*Janus*, where its conduct was directly authorized under both state law and decades of Supreme Court jurisprudence. The Union was not required to forecast changing winds at the Supreme Court and anticipatorily presume the overturning of *Abood*. Instead, we permit private parties to rely on judicial pronouncements of what the law is, without exposing themselves to potential liability for doing so.

---

[2] On appeal, Plaintiffs argue only that the district court erred in dismissing their claim for monetary relief against the Union. They do not contest the dismissal of their claims for declaratory and injunctive relief.

### 1. We assume the retroactivity of the rule established in Janus, but that does not answer the remedial question before this court.

As an initial matter, Plaintiffs urge the retroactive application of the Supreme Court's decision in *Janus*. But, like the Seventh Circuit, we find it unnecessary to "wrestle the retroactivity question to the ground." *Janus II*, 942 F.3d at 360. The Supreme Court has made clear that right and remedy must not be conflated, and that retroactivity of a right does not guarantee a retroactive remedy. *Davis v. United States*, 564 U.S. 229, 243 (2011). Therefore, we will assume that the right delineated in *Janus* applies retroactively and proceed to a review of available remedies.

### 2. A private entity may avail itself of a good faith defense in litigation brought pursuant to 42 U.S.C. § 1983.

The Supreme Court has held that private parties sued under 42 U.S.C. § 1983 cannot claim qualified immunity, but it has suggested in dicta that such parties might be able to assert a good faith defense to liability instead. *Wyatt v. Cole*, 504 U.S. 158, 168–69 (1992); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 n.23 (1982). Although the Supreme Court has never squarely reached the question, we held in *Clement v. City of Glendale* that private parties may invoke a good faith defense to liability under section 1983.[3] 518 F.3d 1090, 1096–97 (9th Cir. 2008).

---

[3] Every other circuit that has considered the issue agrees. *Janus II*, 942 F.3d at 364; *Jarvis v. Cuomo*, 660 F. App'x 72, 75 (2d Cir. 2016); *Pinsky v. Duncan*, 79 F.3d 306, 311–12 (2d Cir. 1996); *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 699 (6th Cir.

Plaintiffs argue that *Clement* should be disregarded. They contend the Ninth Circuit previously reached a contrary outcome in *Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983), and a three-judge panel cannot overturn existing precedent.

Because "we are required to reconcile prior precedents if we can do so," we first assess whether *Clement* and *Howerton* are truly at odds. *Cisneros-Perez v. Gonzales*, 465 F.3d 386, 392 (9th Cir. 2006). We find the two decisions reconcilable. *Howerton* stands for the unremarkable proposition that private parties cannot avail themselves of *qualified immunity* to a section 1983 lawsuit. 708 F.2d at 385 n.10. Both the Supreme Court and later panels of our court have adopted that reading of *Howerton*. *See, e.g.*, *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Howerton* for the proposition that the Ninth Circuit has held that private parties acting under color of state law are not entitled to qualified immunity); *F.E. Trotter, Inc. v. Watkins*, 869 F.2d 1312, 1318 (9th Cir. 1989) (citing *Howerton* for the proposition that "the Ninth Circuit has stated that private defendants are not entitled to qualified immunity in section 1983 actions").

Although *Howerton* used the somewhat less precise language of a "good faith immunity," 708 F.2d at 385 n.10, we do not read the decision to foreclose a good faith *affirmative defense*. Indeed, *Howerton* cited favorably to *Lugar*, 457 U.S. at 942 n.23, for the proposition that "compliance with [a] statute might be raised as an affirmative defense" to section 1983 liability. 708 F.2d at 385 n.10. As the Supreme Court has explained, "a

---

1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1276 (3d Cir. 1994); *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993).

distinction exists between an 'immunity from suit' and other kinds of legal defenses." *Richardson v. McKnight*, 521 U.S. 399, 403 (1997); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (holding that qualified immunity "is an *immunity from suit* rather than a mere defense to liability"). We assume the *Howerton* court appreciated that distinction and grappled only with the former. Thus, the *Clement* court acted well within its authority to find that, while private parties cannot assert an immunity to suit under section 1983, they can invoke a good faith defense.[4] We are bound by *Clement*, which is dispositive as to the threshold question presented by Plaintiffs.

Plaintiffs also argue that an entity cannot invoke the good faith defense, just as a municipality cannot invoke qualified immunity. This argument, however, runs counter to *Clement*, in which we applied the good faith defense to an entity defendant. Plaintiffs' argument is also at odds with the purpose underlying the good faith defense: that private parties should be entitled to rely on binding judicial pronouncements and state law without concern that they will be held retroactively liable for changing precedents. This principle applies equally to a private entity as it does to a private individual.

---

[4] *Clement* is not alone in presuming that Ninth Circuit precedent did not foreclose a good faith defense. For example, in *Jensen v. Lane County*, we considered it an open question whether a private party could invoke "an affirmative good faith defense" to section 1983 liability. 222 F.3d 570, 580 n.5 (9th Cir. 2000).

**3. The good faith defense is not limited by the availability of a similar defense to the most closely analogous common law tort. But, even if it were, the closest analogue allows a good faith defense.**

Plaintiffs contend that any good faith defense must be confined to claims for which the most closely analogous common law tort carried a similar immunity. Plaintiffs argue that conversion is the closest common law analogue to their claim against the Union, that good faith is no defense to conversion, and therefore that good faith can provide no defense to liability here. Plaintiffs derive this argument from the Supreme Court's discussion of the history of qualified immunity in *Wyatt v. Cole*:

> Section 1983 creates a species of tort liability that on its face admits of no immunities. Nonetheless, we have accorded certain government officials either absolute or qualified immunity from suit if the tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish the doctrine. If parties seeking immunity were shielded from tort liability when Congress enacted the Civil Rights Act of 1871—§ 1 of which is codified at 42 U.S.C. § 1983—we infer from legislative silence that Congress did not intend to abrogate such immunities when it imposed liability for actions taken under color of state law. . . . In determining whether there was an immunity at common law that Congress intended to incorporate in the Civil Rights

> Act, we look to the most closely analogous
> torts . . . .

504 U.S. 158, 163–64 (1992) (internal citations and
quotation marks omitted).

Plaintiffs' argument fails for several reasons. *First*, the
above passage applies only to *Wyatt*'s discussion of qualified
immunity, not to the good faith affirmative defense on which
*Wyatt* expressly reserved judgment. The rationales behind
the two doctrines, and their limitations, are not
interchangeable. *Accord Janus II*, 942 F.3d at 365 ("As
several district courts have commented, the Supreme Court
in *Wyatt I* embarked on the search for the most analogous
tort only for *immunity* purposes—the Court never said that
the same methodology should be used for the good-faith
defense.").

*Second*, even qualified immunity is no longer
constrained by a common law tort analogy. *See Wyatt*,
504 U.S. at 166 (noting that "*Harlow* 'completely
reformulated qualified immunity along principles not at all
embodied in the common law'" (quoting *Anderson v.
Creighton*, 483 U.S. 635, 645 (1987))); *see also Ziglar v.
Abbasi*, 137 S. Ct. 1843, 1871 (2017) (Thomas, J.,
dissenting) (explaining that contemporary courts no longer
"ask[] whether the common law in 1871 would have
accorded immunity to an officer for a tort analogous to the
plaintiff's claim under § 1983," but "instead grant immunity
to any officer whose conduct 'does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known'" (quoting *Mullenix v.
Luna*, 136 S. Ct. 305, 308 (2015) (per curiam))). The
Supreme Court itself has emphasized that it "never
suggested that the precise contours of official immunity can

and should be slavishly derived from the often arcane rules of the common law." *Anderson*, 483 U.S. at 645.

*Third*, in *Clement*, we did not limit the applicability of the good faith defense to common law analogues. 518 F.3d at 1096–97 (9th Cir. 2008). Our decision in *Clement* was driven not by the strictures of common law, but rather by principles of equality and fairness—which the Supreme Court likewise indicated could lay the foundation for a good faith defense to section 1983 liability. *See id.* (applying the good faith defense because "[t]he company did its best to follow the law and had no reason to suspect that there would be a constitutional challenge to its actions," and "the constitutional violation arose from the inactions of the police rather than from any act or omission by the towing company"); *Wyatt*, 504 U.S. at 168 (citing "principles of equality and fairness" as the basis for a potential good faith defense).

*Fourth*, Plaintiffs' proposed constraints are contrary to the principles underlying the good faith defense. As noted, the availability of the defense arises out of general principles of equality and fairness—values that are inconsistent with rigid adherence to the oft-arbitrary elements of common law torts as they stood in 1871. It would be an odd result for an affirmative defense grounded in concerns for equality and fairness to hinge upon historical idiosyncrasies and strained legal analogies for causes of action with no clear parallel in nineteenth century tort law. We would find it neither "equal" nor "fair" for a private party's entitlement to a good faith defense to turn not on the innocence of its actions but rather on the elements of an 1871 tort that the party is not charged with committing.

Finally, even if we adopted the common-law-analogue rule, Plaintiffs' position would still fail. Contrary to

Plaintiffs' contention, conversion is not the closest common law analogue to the First Amendment violation alleged in this case. Plaintiffs' First Amendment claim arises not from the taking of their property, but from their compelled speech on behalf of a cause they do not endorse. The unprivileged confiscation of funds from employees' paychecks, on its own, would yield no cognizable First Amendment violation. Moreover, unlike in a traditional conversion case, the Union did not collect agency fees in contravention of state law; the key theme underlying Plaintiffs' section 1983 cause of action is that the Union collected agency fees *in accord with* state law. For these reasons, conversion bears little substantive similarity to Plaintiffs' claim.

Rather, we agree with our sister circuit that abuse of process provides the best analogy to Plaintiffs' claim.**[5]** *Janus II*, 942 F.3d at 365. At common law, abuse of process "provided [a] cause[] of action against private defendants for unjustified harm arising out of the misuse of governmental processes." *Wyatt*, 504 U.S. at 164. Although the prototypical abuse of process claim involves the abuse of *judicial* process, the tort is not clearly so confined. Here, the fundamental premise for section 1983 liability against the Union is its alleged abuse of processes authorized by Washington law—the agency shop regime and its concomitant agency fee collection protocol—toward unconstitutional ends. Indeed, it is the use of governmental processes by the Union that supplies the "color of law" element required to state a claim under section 1983.

---

**[5]** We agree with the Seventh Circuit that "[n]one of these torts is a perfect fit, but they need not be," as the search for a common law analogue is "inherently inexact." *Janus II*, 942 F.3d at 365.

Adopting abuse of process as the appropriate common-law analogue poses no barrier to the Union's invocation of a good faith defense. This is because, at common law, a private party could avoid liability for abuse of process if it acted in good faith. *Id.* at 164; *id.* at 172 (Kennedy, J., concurring); *id.* at 176 (Rehnquist, C.J., dissenting).

**4. Plaintiffs' labeling of their claim as restitutionary does not preclude application of the good faith defense.**

Plaintiffs argue that any good faith defense is limited to liability for *damages*, whereas they seek *restitution* from the Union for agency fees collected in contravention of *Janus*. They contend that "a defendant's good faith will never allow it to *keep* the property or money that it took in violation of another's constitutional rights," even if good faith might provide a shield to liability for additional damages.

As an initial matter, Plaintiffs' restitutionary premise is flawed. Plaintiffs' constitutionally cognizable injury is the intangible dignitary harm suffered from being compelled to subsidize speech they did not endorse. It is *not* the diminution in their assets from the payment of compulsory agency fees. Accordingly, Plaintiffs seek compensatory damages, not true restitution, when they pray for a monetary award in the amount of the agency fees they paid to the Union. The labeling of the relief sought in restitutionary terms does not change the underlying nature of Plaintiffs' claim.

Even accepting Plaintiffs' restitutionary premise, the equities do not weigh in favor of requiring a refund of all agency fees collected pre-*Janus*. The Union bears no fault for acting in reliance on state law and Supreme Court precedent. It collected and spent fees under the

assumption—sanctioned by the nation's highest court—that its conduct was constitutional.  And the Union provided a service to contributing employees in exchange for the agency fees it received.  Indeed, under *Abood*, the Union was required to use those fees for collective bargaining activities that inured to the benefit of all employees it represented—an exchange that cannot be unwound.  It is true that, under current law, the employees suffered a constitutional wrong for which they may have no viable means of compensation if the good faith defense prevails.  Nonetheless, it would not be equitable to order the transfer of funds from one innocent actor to another, particularly where the latter received a benefit from the exchange.  *Accord Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps.*, 466 U.S. 435, 454–55 (1984) (expressing "doubt that the equities call for a refund" of compulsory payments made by employees to their union, even if the practice ran afoul of the law, because objecting employees received a service in exchange for their money); *Janus II*, 942 F.3d at 367 ("[T]hough [plaintiff] contends that he did not want any of the benefits of [the union's] collective bargaining and other representative activities over the years, he received them. Putting the First Amendment issues . . . to one side, there was no unjust 'windfall' to the union . . . but rather an exchange of money for services.").  Under the circumstances here, the most equitable outcome is a prospective change in the Union's policy and practice (which undisputedly occurred), without retrospective monetary liability.

**5. The good faith defense applies to the Union as a matter of law, because the Union was not required to anticipate the overturning of then-binding precedent.**

The Union's assertion of a good faith affirmative defense is sound, but that does not fully answer the question before this court. We must next determine whether the district court correctly found that the good faith defense shielded the Union from retrospective monetary liability as a matter of law.

In collecting compulsory agency fees, the Union relied on presumptively-valid state law and then-binding Supreme Court precedent. The Union now faces an assertion of monetary liability *not* for flouting that law or misinterpreting its bounds, but for adhering to it. Although some justices had signaled their disagreement with *Abood* in the years leading up to *Janus*, *Abood* remained binding authority until it was overruled.[6] We agree with our sister circuit that "[t]he Rule of Law requires that parties abide by, and be able to rely on, what the law *is*, rather than what the readers of tea-leaves predict that it might be in the future." *Janus II*, 942 F.3d at 366.

The Supreme Court has admonished the circuit courts not to presume the overruling of its precedents, irrespective of hints in its decisions that a shift may be on the horizon. *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has

---

[6] Indeed, not long before *Janus*, the Supreme Court affirmed the judgment of this court on the same question presented—albeit by an equally divided court. *Friedrichs v. Cal. Teachers Ass'n*, 136 S. Ct. 1083 (2016). Although the outcome in *Janus* may have been the writing on the wall, it was not a foregone conclusion.

direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."); *Nunez-Reyes v. Holder*, 646 F.3d 684, 692 (9th Cir. 2011) ("As a circuit court, even if recent Supreme Court jurisprudence has perhaps called into question the continuing viability of its precedent, we are bound to follow a controlling Supreme Court precedent until it is explicitly overruled by that Court." (internal quotation marks and brackets omitted)).  We decline to hold private parties to a different standard.  It would be paradoxical for the circuit courts to be *required* to follow *Abood* until its overruling in *Janus*, while private parties incur liability for doing the same.

The ability of the public to rely on the courts' pronouncements of law is integral to the functioning of our judicial system.  After all, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).  If private parties could no longer rely on the pronouncements of even the nation's highest court to steer clear of liability, it could have a destabilizing impact on the judicial system.

Because the Union's action was sanctioned not only by state law, but also by directly on-point Supreme Court precedent, we hold that the good faith defense shields the Union from retrospective monetary liability as a matter of law.  In so ruling, we join a growing consensus of courts across the nation.[7]

---

[7] *See Janus II*, 942 F.3d 352; *Mooney*, 942 F.3d 368; *Aliser v. SEIU Cal.*, No. 19-CV-00426-VC, 2019 WL 6711470, at *1 (N.D. Cal. Dec.

Finally, we reject Plaintiffs' contention that the Union must prove that it "fully complied with the pre-*Janus* constitutional strictures on agency shops" to avail itself of a good faith defense. Plaintiffs' argument lacks any grounding in the claims presented in this action. Plaintiffs alleged in their complaint only that the Union's collection of compulsory agency fees, as a general matter, violated their

10, 2019); *Wenzig v. Serv. Emps. Int'l Union Local 668*, No. CV 1:19-1367, 2019 WL 6715741, at \*10 (M.D. Pa. Dec. 10, 2019); *Hamidi v. SEIU Local 1000*, No. 2:14-CV-00319, 2019 WL 5536324 (E.D. Cal. Oct. 25, 2019); *LaSpina v. SEIU Pa. State Council*, No. 3:18-2018, 2019 WL 4750423 (M.D. Pa. Sept. 30, 2019); *Allen v. Santa Clara Cty. Corr. Peace Officers Ass'n*, No. 18-CV-02230, 2019 WL 4302744 (E.D. Cal. Sept. 11, 2019); *Casanova v. Int'l Ass'n of Machinists, Local 701*, No. 19-CV-00428 (N.D. Ill. Sept. 11, 2019); *Ogle v. Ohio Civil Serv. Emp. Ass'n*, No. 18-CV-1227, 2019 WL 3227936 (S.D. Ohio July 17, 2019), *appeal pending*, No. 19-3701 (6th Cir.); *Diamond v. Pa. State Educ. Ass'n*, No. 18-CV-128, 2019 WL 2929875 (W.D. Pa. July 8, 2019), *appeal pending*, No. 19-2812 (3d Cir.); *Hernandez v. AFSCME Cal.*, No. 18-CV-2419, 2019 WL 2546195 (E.D. Cal. June 20, 2019); *Doughty v. State Emp. Ass'n of N.H.*, No. 19-CV-53 (D.N.H. May 30, 2019), *appeal pending*, No. 19-1636 (1st Cir.); *Babb v. Cal. Teachers Ass'n*, 378 F. Supp. 3d 857 (C.D. Cal. 2019), *appeal pending*, No. 19-55692 (9th Cir.); *Wholean v. CSEA SEIU Local 2001*, No. 18-CV-1008, 2019 WL 1873021 (D. Conn. Apr. 26, 2019), *appeal pending*, No. 19-1563 (2d Cir.); *Akers v. Md. Educ. Ass'n*, 376 F. Supp. 3d 563 (D. Md. 2019), *appeal pending*, No. 19-1524 (4th Cir.); *Bermudez v. SEIU Local 521*, No. 18-CV-4312, 2019 WL 1615414 (N.D. Cal. Apr. 16, 2019); *Hough v. SEIU Local 521*, No. 18-CV-4902, 2019 WL 1785414 (N.D. Cal. Apr. 16, 2019), *appeal pending*, No. 19-15792 (9th Cir.); *Lee v. Ohio Educ. Ass'n*, 366 F. Supp. 3d 980 (N.D. Ohio 2019), *appeal pending*, No. 19-3250 (6th Cir.); *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996 (D. Alaska 2019), *appeal pending*, No. 19-35299 (9th Cir.); *Carey v. Inslee*, 364 F. Supp. 3d 1220 (W.D. Wash. 2019), *appeal pending*, No. 19-35290 (9th Cir.); *Cook v. Brown*, 364 F. Supp. 3d 1184 (D. Or. 2019), *appeal pending*, No. 19-35191 (9th Cir.). *See also Jarvis v. Cuomo*, 660 F. App'x 72 (2d Cir. 2016); *Winner v. Rauner*, No. 15-CV-7213, 2016 WL 7374258 (N.D. Ill. Dec. 20, 2016); *Hoffman v. Inslee*, No. 14-CV-200, 2016 WL 6126016 (W.D. Wash. Oct. 20, 2016).

rights under the First and Fourteenth Amendments. Plaintiffs did not allege that the Union violated their rights under *Abood* or any similar pre-*Janus* authority. In fact, Plaintiffs devoted several paragraphs of their complaint to an effort to discredit *Abood* as controlling authority, so that their claims might prevail.

Because Plaintiffs' claims arise from the Union's reliance on *Abood*, not allegations that the Union flouted that authority, the Union need not show compliance with *Abood*'s strictures to assert successfully a good faith defense. Such a requirement would be entirely divorced from the allegations in this action.

## IV.  CONCLUSION

When the Supreme Court delivered its decision in *Janus*, the Union was required to change its policies to conform to the newly-announced law of the land. And it did. But the shift in precedent only carries the plaintiff employees so far. We hold that the Union is not retrospectively liable for doing exactly what we expect of private parties: adhering to the governing law of its state and deferring to the Supreme Court's interpretations of the Constitution. A contrary result would upend the very principles upon which our legal system depends. The good faith affirmative defense applies as a matter of law, and the district court was right to dismiss Plaintiffs' claim for monetary relief.

**AFFIRMED.**