**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

**No. 19-1524**

---

RUTH AKERS, on behalf of herself and all others similarly situated; SHARON MOESEL,

Plaintiffs – Appellants,

v.

MARYLAND STATE EDUCATION ASSOCIATION; TEACHERS ASSOCIATION OF BALTIMORE COUNTY; NATIONAL EDUCATION ASSOCIATION; BALTIMORE COUNTY PUBLIC SCHOOLS, as representative of the class of all school districts in Maryland; LARRY HOGAN, in his official capacity as governor of Maryland; BRIAN E. FROSH, in his official capacity as Attorney General of Maryland; ELIZABETH MOLINA MORGAN, each in their official capacities as members of the Maryland Public School Labor Relations Board; ROBERT I. CHANIN, each in their official capacities as members of the Maryland Public School Labor Relations Board; JOHN A. HAYDEN, III, each in their official capacities as members of the Maryland Public School Labor Relations Board; DONALD W. HARMON, each in their official capacities as members of the Maryland Public School Labor Relations Board; RONALD S. BOOZER, each in their official capacities as members of the Maryland Public School Labor Relations Board; TEACHERS ASSOCIATION OF ANNE ARUNDEL COUNTY, INC.,

Defendants – Appellees,

and

GEORGE ARLOTTO; VERLETTA WHITE,

Defendants.

------------------------------

NATIONAL RIGHT TO WORK LEGAL DEFENSE AND EDUCATION FOUNDATION, INC.,

Amicus Supporting Appellant.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, District Judge. (1:18-cv-01797-RDB)

_____

Argued: December 9, 2020                              Decided: March 8, 2021

_____

Before KING, FLOYD, and THACKER, Circuit Judges.

_____

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Floyd and Judge Thacker joined.

_____

**ARGUED:** Jonathan Franklin Mitchell, MITCHELL LAW PLLC, Austin, Texas, for Appellants. Leon Dayan, BREDHOFF & KAISER, P.L.L.C., Washington, D.C., for Appellees. **ON BRIEF:** Ryan R. Dietrich, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees Larry Hogan, in his official capacity as governor of Maryland; Brian E. Frosh, in his capacity as Attorney General of Maryland; and Elizabeth Molina Morgan, Robert I. Chanin, John A. Hayden, III, Donald W. Harmon, and Ronald S. Boozer, each in their official capacities as members of the Maryland Public School Labor Relations Board. Alice O'Brien, NATIONAL EDUCATION ASSOCIATION, Washington, D.C.; John M. West, Jacob Karabell, BREDHOFF & KAISER, P.L.L.C., Washington, D.C., for Appellees Maryland State Education Association, Teachers Association of Baltimore County, Teachers Association of Anne Arundel County, and National Education Association. Kristy K. Anderson, MARYLAND STATE EDUCATION ASSOCIATION, Annapolis, Maryland, for Appellees Maryland State Education Association, Teachers Association of Baltimore County, and Teachers Association of Anne Arundel County. William L. Messenger, NATIONAL RIGHT TO WORK LEGAL DEFENSE FOUNDATION, INC., Springfield, Virginia, for Amicus National Right to Work Legal Defense Foundation.

_____

KING, Circuit Judge:

Plaintiffs Ruth Akers and Sharon Moesel — Maryland public school teachers — initiated this civil action in the District of Maryland against four public-sector teachers' unions (the "union defendants"), a county school system, and various public officials.[1] Pursuant to 42 U.S.C. § 1983, the plaintiffs seek relief for themselves and other non-union Maryland public school teachers who were compelled to pay "representation fees" to unions in order to be employed as Maryland public school teachers. More specifically, the plaintiffs seek a refund of representation fees that they paid to the unions prior to the Supreme Court's decision in *Janus v. American Federation of State, County, & Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018). In *Janus*, the Court overruled its 1977 decision in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), and decided that requiring non-union employees to pay representation fees to public-sector unions contravenes the First Amendment. The district court dismissed this action in April 2019, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. *See Akers v. Md. State Educ. Ass'n*, No. 1:18-cv-01797 (D. Md. Apr. 18, 2019), ECF No. 110 (the "Opinion"). As explained herein, we agree with the Opinion and affirm.

---

[1] The four union defendants are the Teachers Association of Baltimore County, the Teachers Association of Anne Arundel County, Inc., the Maryland State Education Association, and the National Education Association.

I.

Plaintiffs Akers and Moesel are public school teachers in Maryland who are not members of a public-sector teachers' union. Akers chose not to join the defendant Teachers Association of Baltimore County. Moesel once joined the defendant Teachers Association of Anne Arundel County but was expelled from it in May 2017. Those county unions are affiliates of the defendants Maryland State Education Association and the National Education Association.

Under Maryland law, a public school teacher was not required to be a member of a county union in order to be employed. In fact, such a union was required by state law to "represent all employees in the [county] fairly and without discrimination, whether or not the employees are members of the [union]." *See* Md. Code Educ. § 6-407(b). Maryland law, however, also required that the county unions and school districts negotiate a "reasonable service or representation fee[] to be charged nonmembers for representing them in negotiations [and] contract administration." *Id.* § 6-407(c)(1). Thus, a teacher who was not a member of a county union, such as Akers or Moesel, was required to pay representation fees to the union in order to be employed as a Maryland public school teacher.

On June 18, 2018, Akers filed this class action in the District of Maryland, alleging under 42 U.S.C. § 1983 that the First Amendment rights of herself and similarly-situated Maryland public school teachers were being contravened because they were required to pay representation fees as a condition of their employment. Nine days later, on June 27, 2018, the Supreme Court rendered its *Janus* decision, reversing its 1977 decision in *Abood*

4

and holding that "public-sector unions may no longer extract [representation] fees from nonconsenting employees." *See Janus*, 138 S. Ct. at 2486. According to the *Janus* Court, requiring payment of representation fees to unions by non-union employees contravenes the First Amendment because it constitutes compelled speech. As a result of the *Janus* decision, public-sector unions, such as the union defendants in this litigation, have ceased collecting representation fees from nonconsenting employees.

On September 7, 2018, Akers and Moesel filed their Amended Complaint in this litigation, naming Moesel as a co-plaintiff. The Amended Complaint — the operative complaint herein — sought, inter alia, a refund of all representation fees collected by the union defendants prior to the *Janus* decision.

On October 18, 2018, the union defendants and the other defendants moved in two separate filings to dismiss the Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For reasons explained in its Opinion of April 18, 2019, the district court granted both dismissal motions. As relevant here, the court determined that the plaintiffs could not recover their payments of pre-*Janus* representation fees to the union defendants because the "collection of those fees was authorized by state statute and pursuant to Supreme Court precedent, and the good-faith defense bars Plaintiffs' claim." *See* Opinion 11. Although at that point in time none of the courts of appeals had addressed the applicability of the good-faith defense in the relevant circumstances, the Opinion adopted the reasoning of multiple federal district courts that had decided the issue. As the Opinion related, those courts "uniformly held that . . . the good-faith defense bars refund claims." *Id.* at 10. Thus, the district court applied the good-faith defense here and

5

dismissed with prejudice the plaintiffs' *Janus* claim, along with the balance of the Amended Complaint. The plaintiffs have timely appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.[2]

## II.

With respect to their *Janus* claim, the plaintiffs contend on appeal that the district court erred by relying on the good-faith defense to dismiss the claim under Federal Rule of Civil Procedure 12(b)(6). We review a Rule 12(b)(6) dismissal de novo. *See Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019).

We observe at the outset of our analysis that the plaintiffs' case is one of several dozen lawsuits being pursued around the country in which non-union employees seek monetary relief for the representation fees they paid to public-sector unions prior to the *Janus* decision. And every court of appeals to have addressed the question of whether public-sector unions are entitled to interpose the good-faith defense as a bar to the refund of representation fees — that is, the First, Second, Third, Sixth, Seventh, and Ninth Circuits — have held that the good-faith defense bars such claims. *See Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 942 F.3d 352, 366-67 (7th Cir. 2019) (holding that

---

[2] The Amended Complaint alleged five claims in addition to the *Janus* claim, including two claims whose dismissal is challenged in this appeal: that the union defendants' exclusive representation of Maryland's public school teachers in the bargaining process violates the First Amendment, and that the exclusive representation of Maryland public school teachers by the Maryland State Education Association and its local affiliates violates federal antitrust law.

good-faith defense precludes refund of representation fees paid to public-sector unions by nonconsenting employees); *Doughty v. State Emps.' Ass'n of N.H., SEIU Loc. 1984, CTW, CLC*, 981 F.3d 128, 134-38 (1st Cir. 2020) (same); *Diamond v. Pa. State Educ. Ass'n*, 972 F.3d 262, 271-73 (3d Cir. 2020) (same); *Wholean v. CSEA SEIU Loc. 2001*, 955 F.3d 332, 334 (2d Cir. 2020) (same); *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 391 (6th Cir. 2020) (same); *Danielson v. Inslee*, 945 F.3d 1096, 1097 (9th Cir. 2019) (same).

A.

As a threshold matter, we must consider whether the Supreme Court's *Janus* decision should be accorded retroactive application. If the *Janus* decision is only entitled to prospective application, the plaintiffs' claim for reimbursement of the representation fees they paid to the union defendants will necessarily fail. Although the plaintiffs maintain that *Janus* is entitled to retroactive application, the Supreme Court suggested that the decision applies prospectively. *See Janus*, 138 S. Ct. at 2486 (recognizing that public-sector unions received a "considerable windfall" through their collection of representation fees during the *Abood* era and that those unions "may no longer extract" representation fees from non-union employees). Consistent with the recent decisions of several of our sister circuits, however, we will not decide the retroactivity issue. We will instead assume that *Janus* is entitled to retroactive application and proceed to dispose of this appeal on the basis of the good-faith defense interposed by the union defendants. *See, e.g.*, *Lee*, 951 F.3d at 389.

7

B.

1.

In their effort to contest the applicability of the good-faith defense, the plaintiffs first argue that the good-faith defense is not available to a private party sued under 42 U.S.C. § 1983. And it is undisputed that each of the union defendants is a private party. Thus, if a private party sued under § 1983 is not entitled to interpose good faith as a defense — an issue of first impression in our Circuit — the plaintiffs could prevail on their *Janus* claim.

The question of whether there is a good-faith defense to private-party damages liability in § 1983 proceedings is informed by the Supreme Court's decision in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). The *Lugar* Court established a test for private-party liability for claims under § 1983, ruling that such claims would be viable so long as two requirements are satisfied: (1) the claimed deprivation of constitutional rights "resulted from the exercise of a right or privilege having its source in state authority"; and (2) the private-actor defendant can be appropriately characterized as a state actor. *Id.* at 939. The Court acknowledged that its holding could cause a private individual to be responsible for adhering to a state law subsequently declared unconstitutional, a problem which "should be dealt with . . . by establishing an affirmative defense." *Id.* at 942 n.23.

Ten years later, the Supreme Court considered in *Wyatt v. Cole*, 504 U.S. 158, 159 (1992), whether a private actor sued under § 1983 is entitled to assert qualified immunity like his or her governmental counterpart. By that time, three of the courts of appeals had extended qualified immunity to a private actor and two had declined to do so. *Id.* at 161.

A sixth court of appeals recognized that the good-faith defense can be utilized by a private actor who was adhering to state law, as the *Lugar* court had suggested ten years prior. *Id.* As a result, the *Wyatt* Court confronted the circuit split created by at least three different applications of the *Lugar* decision.

Ultimately, the *Wyatt* Court concluded that private parties are not entitled to qualified immunity. *See* 504 U.S. at 164-67. The Court recognized, however, that "principles of equality and fairness may suggest . . . that private citizens who rely unsuspectingly on state laws they did not create and may have no reason to believe are invalid should have some protection from liability, as do their government counterparts." *Id.* at 168. In any event, because the question presented was limited to the applicability of qualified immunity, the Court declared that it could offer "no relief" to the private-party defendants. *Id.* Nevertheless, the Court again emphasized — as it had ten years earlier in *Lugar* — that it was leaving open the question of whether a private party is "entitled to an affirmative defense based on good faith." *Id.* at 169.

The *Wyatt* decision resulted in a remand to the Fifth Circuit, which ruled that "private defendants . . . may be held liable for damages under § 1983 only if they failed to act in good faith in invoking the unconstitutional state procedures." *See Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir.), *cert. denied*, 510 U.S. 977 (1993). The court of appeals observed that the Supreme Court's *Wyatt* decision "largely answered" the good-faith defense issue, despite technically leaving it open. *Id.* And all the circuits that have since addressed the issue — that is, the Second, Third, Fifth, Sixth, Seventh, and Ninth Circuits — have ruled that a private party is entitled to assert the good-faith defense to liability

9

under § 1983. *See Wyatt*, 994 F.2d at 1118 (determining that private party sued under § 1983 may interpose good-faith defense against damages); *Janus*, 942 F.3d at 361-64 (same); *Clement v. City of Glendale*, 518 F.3d 1090, 1096-97 (9th Cir. 2008) (same); *Vector Rsch., Inc. v. Howard & Howard Att'ys P.C.*, 76 F.3d 692, 699 (6th Cir. 1996) (same); *Pinsky v. Duncan*, 79 F.3d 306, 311-12 (2d Cir. 1996) (same); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1275-77 (3d Cir. 1994) (same).

We readily agree with our six sister circuits and recognize that the good-faith defense is available to a private-party defendant sued under § 1983. As a result, we also agree with the resolution of this issue made by the Opinion of the district court from which this appeal emanates.

2.

The plaintiffs next argue that, even if the good-faith defense may generally be available to a private-party defendant in a § 1983 case, it is not available to the union defendants here. The plaintiffs present two alternative bases for that proposition. First, they contend that the remedy they seek — restitution of the representation fees — is an equitable remedy, and that the good-faith defense does not apply to equitable claims. Second, the plaintiffs assert that because good faith has never been a defense to the tort of conversion — which in their view is the common law tort most analogous to the union defendants' conduct — good faith is not a defense here either.

a.

The plaintiffs assert that an equitable claim for restitution cannot be defeated on good-faith grounds because the defenses of qualified immunity and good faith can only

protect a defendant from liability for *damages*. Despite their best efforts, however, the plaintiffs' *Janus* claim is clearly for damages. *See Carey v. Piphus*, 435 U.S. 247, 254 (1978) (recognizing that "the basic purpose of a § 1983 damages award" is "to compensate persons for injuries caused by the deprivation of constitutional rights").

As the Supreme Court explained just five years ago, "restitution in equity typically involved enforcement of a 'constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.'" *See Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 143 (2016) (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)). But where a plaintiff seeks "recovery from the beneficiaries' assets generally" because her specific property has dissipated or is otherwise no longer traceable, the claim "is a *legal* remedy, not an equitable one." *Id.* at 144-45. In this litigation, the plaintiffs seek to recover from the union defendants' general treasury fund, and the plaintiffs concede that their representation fee payments have been commingled with other monies of the union defendants and have likely been spent. Therefore, the property that the plaintiffs seek to recover cannot clearly be traced to specific funds in the possession of the union defendants.

Notably, the Seventh Circuit recently decided an appeal where a class of teachers were seeking to recover representation fees paid pre-*Janus* under the very theory pursued by the plaintiffs here — that the class was seeking restitution rather than damages. *See Mooney v. Ill. Educ. Ass'n*, 942 F.3d 368 (7th Cir. 2019). The Seventh Circuit ruled that, despite the label the class advanced, it was an action for damages. *Id.* at 371. More

11

specifically, the court observed that the claim was against the public-sector union's treasury, not against an identifiable fund or asset. *Id.* And it was not enough that the fees paid to the union had once been part of the union's overall assets. *Id.* That is, according to the Seventh Circuit, to adhere the Supreme Court's ruling in *Montanile*, the plaintiffs were obliged to point to an identifiable fund and demonstrate that their fees were yet in the union's possession. *Id.* (citing *Montanile*, 577 U.S. at 146). In an earlier decision, the Sixth Circuit similarly concluded that plaintiffs cannot escape the legal principles governing the distinction between law and equity "by placing a different label — 'restitution' rather than 'damages' — on the money award." *See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. First Agency, Inc.*, 756 F.3d 954, 960 (6th Cir. 2014).

Because the plaintiffs here are unable to point to any identifiable fund in the union defendants' possession, we follow the reasoning of the Sixth and Seventh Circuits and conclude that, in substance, the plaintiffs' claim for relief is a claim for damages. Therefore, the union defendants are entitled to interpose the good-faith defense against that claim.

b.

Finally, the plaintiffs maintain that the good-faith defense is not available to the union defendants because it was not recognized as a defense to the most closely analogous tort — the tort of conversion — in 1871 when Congress enacted 42 U.S.C. § 1983. The plaintiffs' argument rests on two premises: (1) that the good-faith defense is only available in a § 1983 case if it was recognized in 1871 as a defense to the most closely analogous

12

tort; and (2) that conversion is the most closely analogous tort to the union defendants' conduct in this case. Both premises, however, are flawed.

First, it is not clear that a § 1983 private-party defendant may only rely on a defense if, at common law, it was recognized as a defense to the most closely analogous tort. The Supreme Court in *Wyatt* did not identify or discuss the concept of the most closely analogous tort in relation to affirmative defenses in § 1983 cases but rather only discussed such concept in relation to qualified immunity. Several of our sister circuits have wrestled with the affirmative-defense issue. For example, the Third Circuit opined that "there is no reason to think that [the Court] would apply a historical immunity analysis to what it obviously considered to be a distinct good faith analysis." *See Diamond*, 972 F.3d at 272. The Seventh Circuit agreed, observing that the Supreme Court in *Wyatt* "embarked on the search for the most analogous tort only for *immunity* purposes — the Court never said that the same methodology should be used for the good-faith defense." *See Janus*, 942 F.3d at 365.

Nevertheless, if we assume that we must use the most analogous tort framework, conversion is simply not the most analogous tort. The crux of the plaintiffs' *Janus* claim is not that money was wrongfully taken from them, but rather that their money was used to subsidize the union defendants' political and ideological activities. For that reason, as the First, Sixth, Seventh, and Ninth Circuits have ruled, the tort of abuse of process is the most closely analogous tort, and good faith was recognized as a defense to that tort in 1871. *See Doughty*, 981 F.3d at 132-36; *Lee*, 951 F.3d at 392 n.2; *Janus*, 942 F.3d at 366; *Danielson*, 945 F.3d at 1102. Abuse of process constitutes a "cause[] of action against private

13

defendants for unjustified harm arising out of the misuse of governmental processes." *See Wyatt*, 504 U.S. at 164. Thus, abuse of process most closely corresponds to the union defendants' use of a Maryland statute to collect representation fees from non-union teachers, like Akers and Moesel.

*   *   *

In sum, consistent with the weight of authority from our sister circuits, we affirm the district court and rule that the union defendants are entitled to utilize the good-faith defense with respect to the plaintiffs' *Janus* claim. As a result, the defendants are not required to refund the representation fees that the plaintiffs paid to the union defendants prior to the *Janus* decision.[3]

III.

Pursuant to the foregoing, we embrace the reasoning of the Opinion and affirm the judgment of the district court.

*AFFIRMED*

---

[3] We also affirm the district court's dismissal of the two other claims at issue in this appeal. *See supra* note 2. We agree that the First Amendment claim against Maryland's exclusive representation regime is foreclosed by Supreme Court precedent. *See Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 288-90 (1984) (holding that state statute restricting public employer's ability to confer with organizations other than those selected as exclusive representatives did not violate speech and associational rights of those who were not members of organization selected as exclusive representative). We also agree that the Amended Complaint fails to plead a plausible antitrust claim, in that it "makes only a conclusory assertion" that the collective bargaining agreements entered into by the union defendants and the public school districts were in restraint of trade. *See* Opinion 14-15.