RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0070p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

NATHANIEL OGLE,

      *Plaintiff-Appellant*,

    *v.*

OHIO CIVIL SERVICE EMPLOYEES ASSOCIATION, AFSCME LOCAL 11, AFL-CIO,

      *Defendant-Appellee*.

> No. 19-3701

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:18-cv-01227—George C. Smith, District Judge.

Argued: January 30, 2020

Decided and Filed: March 5, 2020

Before: SUTTON, BUSH, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** William Messenger, NATIONAL RIGHT TO WORK LEGAL DEFENSE FOUNDATION, INC., Springfield, Virginia, for Appellant. Leon Dayan, BREDHOFF & KAISER, PLLC, Washington, D.C., for Appellee. **ON BRIEF:** William Messenger, Aaron Solem, NATIONAL RIGHT TO WORK LEGAL DEFENSE FOUNDATION, INC., Springfield, Virginia, Donald C. Bey, ISSAC WILES BURKHOLDER & TEETOR LLC, Columbus, Ohio, for Appellant. Leon Dayan, Richard F. Griffin, Jr., April Pullium, BREDHOFF & KAISER, PLLC, Washington, D.C., Brian J. Eastman, OHIO CIVIL SERVICE EMPLOYEES ASSOCIATION, AFSCME LOCAL 11, AFL-CIO, Westerville, Ohio, for Appellee.

---

**OPINION**

---

PER CURIAM.  Nathaniel Ogle works for the Ohio Department of Taxation.  He is not a member of the Ohio Civil Service Employees Association, the union that represents the Department's employees in collective bargaining with the State of Ohio.  Under state law, the union may require non-members like Ogle to pay "fair share" fees to defray the cost of collective-bargaining activities.  Ohio Rev. Code Ann. § 4117.09(C).

Between July 2015 and February 2018, the State deducted these fees from his pay without consent.  In July 2018, the Supreme Court held that compulsory "fair share" fees violate the First (and Fourteenth) Amendment free-speech rights of public employees.  *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2486 (2018).  In the process, the Court overruled *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), which had authorized such fees.

A few months later, Ogle filed this § 1983 action against the union on free speech grounds.  Through this class-action lawsuit, he seeks a refund of the fees he and others paid from 2015 through 2018.

The union moved to dismiss the lawsuit on the ground that it relied on *Abood* in good faith when it collected the fees.  The district court granted the union's motion to dismiss.  Ogle appealed.

In a separate appeal from a separate case, our court recently joined two other circuits in holding that public-sector unions that collected "fair share" fees in reliance on *Abood* may assert a good-faith defense to § 1983 lawsuits that seek the return of those fees.  *Lee v. Ohio Educ. Ass'n*, No. 19-3250, 2020 WL 881265, at *1 (6th Cir. Feb. 24, 2020); *see Janus v. AFSCME, Council 31*, 942 F.3d 352, 364–66 (7th Cir. 2019); *Danielson v. Inslee*, 945 F.3d 1096, 1098–99 (9th Cir. 2019).

Because we have no license to overrule another panel of this court, we too must recognize the union's good-faith defense.  One feature of today's case, however, requires a brief

addendum.  The claimant in *Lee* conceded the existence of a good-faith defense.  2020 WL 881265, at *4.  Ogle does not.  He objects to its validity.  Up-front challenges to the good-faith defense and arguments about its scope have plenty of overlap to be sure.  But Ogle raises a point not squarely addressed in *Lee*.  That prompts a few words about the basis for the defense and its application here.

Ogle's objection runs up against the reality that this circuit has long recognized a good-faith defense to certain § 1983 claims.  *See Duncan v. Peck*, 844 F.2d 1261, 1266–67 (6th Cir. 1988).  So have members of the Supreme Court.  In *Wyatt v. Cole*, five justices agreed that private parties may assert a good-faith defense or good-faith immunity to some § 1983 lawsuits—there, a due process claim challenging the seizure of disputed property.  *See* 504 U.S. 158, 170 (1992) (Kennedy, J., concurring, joined by Scalia, J.); *id.* at 176–77 (Rehnquist, C.J., dissenting, joined by Souter and Thomas, J.J.).

The defense emerges from an interpretation of § 1983.  The statute's silence about defenses or immunities requires an inquiry into the historical context from which the statute emerged, including the limitations on comparable actions that existed at common law.  *Wyatt*, 504 U.S. at 170–72 (Kennedy, J., concurring); *Pierson v. Ray*, 386 U.S. 547, 554–57 (1967).  Congress enacted the 1871 law against the backdrop of "common-law principles, including defenses previously recognized in ordinary tort litigation."  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258 (1981).  That is why the Court "look[s] to the common law for guidance" to decide when a public official enjoys immunity from lawsuits under § 1983, not to "freewheeling policy choice[s]."  *Malley v. Briggs*, 475 U.S. 335, 340, 342 (1986).  And that is why this circuit looks to the most closely analogous tort at common law in deciding whether private defendants may assert a good-faith defense to certain § 1983 claims.  *Duncan*, 844 F.2d at 1263–64, 1266–68.

*Lee* explained that abuse of process is the most plausible common-law tort analogue to employees' post-*Janus* First Amendment claims.  2020 WL 881265, at *4 n.2.  The Seventh and Ninth Circuits agree.  *Danielson*, 945 F.3d at 1102; *Janus*, 942 F.3d at 365.  Under that analogy, the union may avoid liability by showing good-faith reliance on *Abood* and the Ohio law that permitted the collection of these fees.  *See Duncan*, 844 F.2d at 1267–68.  Think about the

problem this way. Public-sector unions may enlist the State's help (and its ability to coerce unwilling employees) to carry out everyday functions. But a union that misuses this help, say because the state-assisted action would violate the U.S. Constitution, may face liability under § 1983. *See Danielson*, 945 F.3d at 1102; *cf.* Thomas Cooley, *A Treatise on the Law of Torts* 189 (1879) (defining abuse of process at common law as the "willful[]" use of process "for a purpose not justified by the law"). A narrow good-faith defense protects those who unwittingly cross that line in reliance on a presumptively valid state law—those who had good cause in other words to call on the governmental process in the first instance. *Wyatt*, 504 U.S. at 176 & n.1. Unions that used the States' authority to extract "fair share" fees from non-members may in retrospect have crossed into forbidden territory, 138 S. Ct. at 2486, but if they did so before *Janus* they may invoke the good-faith defense because *Abood* and state law told them they were in the clear. All of this offers the best explanation for *Lee* and the best way to reconcile it with our precedent and U.S. Supreme Court precedent.

Any other approach runs the risk of sweeping in more than necessary. How else to distinguish cases in which a State discriminated in other ways—say based on race, gender, or faith rather than political perspective? In these other settings, we can't imagine that a court would hesitate to award damages to the claimants in the amount of a discriminatory charge even if the entity relied on a 40-year-old Supreme Court precedent and a state law, and even if the request went back several years. *Cf. NLRB v. Actors' Equity Ass'n*, 644 F.2d 939, 943 (2d Cir. 1981) (permitting the recoupment of five years' worth of fees that discriminated based on nationality and that violated the National Labor Relations Act). Most claims for discrimination on the basis of race, gender, or faith do not depend on the use or misuse of state-law process but on other grounds of state action. That said, the hard question left by this case is what would happen if the discrimination involved state-law process and turned on these other forms of discrimination. What's good for one, it would seem, ought to be good for the other.

We affirm.