# United States Court of Appeals
## For the First Circuit

No. 19-1636

PATRICK DOUGHTY; RANDY SEVERANCE,

Plaintiffs, Appellants,

v.

STATE EMPLOYEES' ASSOCIATION OF NEW HAMPSHIRE,
SEIU LOCAL 1984, CTW, CLC,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Howard, Chief Judge,
Thompson and Barron, Circuit Judges.

Frank D. Garrison, with whom Milton L. Chappell, National Right to Work Legal Defense Foundation, Inc., Bryan K. Gould, Cooley Ann Arroyo, and Cleveland, Waters & Bass, P.A., were on brief, for appellants.
Leon Dayan, with whom Ramya Ravindran was on brief, for appellee.

November 30, 2020

**BARRON**, **Circuit Judge**. This appeal concerns a suit by two New Hampshire state employees, Patrick Doughty and Randy Severance, against the State Employees' Association of New Hampshire ("the Union") pursuant to 42 U.S.C. § 1983. They seek retrospective relief for themselves and other state employees who were not members of the Union but were forced to pay so-called "agency fees" to it prior to the United States Supreme Court's decision in Janus v. American Federation of State, County & Municipal Employees, Council 31, 138 S. Ct. 2448 (2018). There, the Court overruled its decades-old decision in Abood v. Detroit Board of Education, 431 U.S. 209 (1977), and held that such "agency fee" arrangements violate the First Amendment of the United States Constitution by compelling the speech and association of non-union governmental employees. The District Court granted the Union's motion to dismiss Doughty and Severance's complaint, and we affirm, aligning ourselves with every circuit to have addressed whether such a backward-looking, Janus-based claim is cognizable under § 1983.[1]

---

[1] See generally Wholean v. CSEA SEIU Loc. 2001, 955 F.3d 332 (2d Cir. 2020); Diamond v. Pa. State Educ. Ass'n, 972 F.3d 262 (3d Cir. 2020); Ogle v. Ohio Civ. Serv. Emps. Ass'n, 951 F.3d 794 (6th Cir. 2020); Lee v. Ohio Educ. Ass'n, 951 F.3d 386 (6th Cir. 2020); Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31, 942 F.3d 352 (7th Cir. 2019); Danielson v. Inslee, 945 F.3d 1096 (9th Cir. 2019).

New Hampshire state law imposes on unions that serve as the exclusive representative of a bargaining unit for state or local government employees a duty of fair representation to the unit's non-union employees during the collective bargaining process.  See Nashua Tchrs. Union v. Nashua Sch. Dist., 707 A.2d 448, 451 (N.H. 1998) (citing N.H. Rev. Stat. Ann. § 273-A:3). Prior to Janus's overruling of Abood, the New Hampshire Supreme Court held that the State's "overall legislative scheme to promote labor peace" impliedly permitted the negotiation of collective bargaining agreements between unions and governmental employers that called for the payment of agency fees.  See id. at 450.  In addition, the New Hampshire Supreme Court held that, under Abood, the First Amendment was not violated if a state or local governmental employer made the payment of these fees in connection with such agreements a condition of employment for their employees. Id.

The New Hampshire Supreme Court explained that collective bargaining agreements are contracts forged between the employer and the union that serves as the exclusive bargaining representative for the relevant bargaining unit.  Id. at 451.  It further explained that agency fees compensate for the fact that, although such a union secures benefits through the collective

bargaining process for the bargaining unit's union and non-union employees alike, only the union employees pay dues to the union. Id. Thus, until Janus, New Hampshire permitted "agency fees" to "defray the costs associated with [the union's] exclusive representation and collective bargaining," and such fees were regularly a subject of collective bargaining agreements between unions and public employers in the state. Id. at 449.

**B.**

On January 14, 2019, following Janus, Doughty and Severance filed suit in the United States District Court for the District of New Hampshire against the Union under § 1983. Their complaint alleged that the Union was the exclusive representative for their respective bargaining units and that they were not themselves members of the Union. The complaint further alleged that, at the time relevant to this suit, they were "forced" to pay agency fees to the Union "as a condition of employment" in connection with the Union's collective bargaining agreements with their respective state employers. Finally, their complaint claimed that "the State" deducted the agency fees from their paychecks and remitted them to the Union, although the record offers no further details about the mechanics of the payment process.

By the time that Doughty and Severance filed their suit, the Union had ceased collecting agency fees, as deductions from

the employees' paychecks to pay those fees ended in Janus's wake. Their complaint nevertheless requested, based on Janus's retroactive application, that the District Court certify a class of "all individuals employed by the State, and other public employers, who, as a condition of employment, were forced to pay union fees to [the Union], which distributed some of the fees to its affiliates, any time during the limitations period." Doughty and Severance further claimed that the members of this class were entitled, pursuant to § 1983, to "compensatory damages, refunds, or restitution in the amount of compulsory union fees paid to the Union from their wages without their written consent, and other amounts as principles of justice and equity require."

## c.

On March 18, 2019, the Union moved to dismiss the plaintiffs' complaint for failure to state a claim on which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The District Court held a hearing on that motion on May 30, 2019 and granted it that same day.

The District Court proceeded on the understanding -- which the Union did not contest -- that, due to Janus's retroactive application, the state employers' requirement that the agency fees be paid as a condition of Doughty's and Severance's employment violated the First Amendment. The District Court also assumed -- and, again, without dispute -- that the Union, although a private

- 5 -

entity, was a proper defendant under § 1983 for this Janus-based suit, despite the fact that the requirement to pay the agency fees had been imposed on them by their employer as a condition of their employment and not by the Union itself.[2]  Finally, the District Court implicitly recognized that the doctrine of qualified immunity, which protects governmental officials from damages liability when sued in their individual capacities under § 1983 in the absence of their having violated "clearly established" law, see District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018), does not protect private defendants, see Wyatt v. Cole, 504 U.S. 158, 168-69 (1992), and so provided no such immunity to the Union here.

Nevertheless, the District Court expressed skepticism that § 1983 permitted Doughty and Severance's claim against the

---

[2] In Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), the Court held that a private party who attached the assets of a debtor under a state attachment statute could be a proper defendant under § 1983 for a claim brought by a property owner based on a violation of the property owner's right to procedural due process on the ground that the defendant was acting under color of law in bringing about the attachment pursuant to that statute's summary attachment process.  Id. at 924, 933-34; see also Wyatt v. Cole, 504 U.S. 158, 159-60 (1992) (same).  Here, of course, the Union merely received the agency fees pursuant to a freely negotiated contractual provision with the plaintiffs' employer and those fees were made available to it, in turn, based on the plaintiffs' contract with their employer.  Nevertheless, as we have noted, there is no dispute on appeal as to whether, on these facts, the Union is a proper § 1983 defendant for the claimed First Amendment violation.  Thus, like the District Court, we assume that the Union is, despite the possible reasons to question that assumption.

Union to go forward, given their claim's exclusive focus on agency-fee payments made prior to Janus. In that connection, the District Court asked the plaintiffs' counsel at the hearing on the motion to dismiss to "step back for a second" and explain "how in any version of the world" it would be "right to require [the Union] to pay damages for acting consistent with the requirements of state law and . . . [S]upreme [C]ourt precedent." The District Court emphasized that the Union's "behavior was entirely constitutional at the time they engaged in it," and that it is an unusual situation where the Supreme Court "decides to flatly overturn its prior precedent." Because, as a general matter, "[o]ne of the reasons that judges express their views in written opinions is so that people can rely on" them, the District Court explained, it would be "arrogant in the extreme" to allow individuals who had so relied to be "subjected to suits for damages" in the rare cases where "judges flip 180 degrees on the law." The District Court added that it was "incomprehensible" that "damage[s] actions [could] be maintained under" the "unique circumstances" of this case.

The District Court then granted the Union's motion to dismiss Doughty and Severance's complaint based on two independent grounds. First, the District Court ruled that "a good faith defense must be available to protect defendants under these kinds of circumstances" (emphasis added), and that Doughty and Severance could not overcome that defense. Second, the District Court held

that Doughty and Severance's § 1983 claim was analogous to the common-law tort of abuse of process, for which a "good faith defense has traditionally been recognized."[3] For this reason, too, the District Court held, Doughty and Severance would have to overcome a "good faith defense" to succeed in obtaining their requested relief, which they could not do, given that the Union collected the fees at issue before Janus overruled Abood.

The District Court emphasized that it did not find the plaintiffs' claim for retrospective relief -- whether for damages or restitution -- to be "frivolous," but it closed by stating that it did not "see how it [could] possibly proceed." Instead, the District Court suggested that the plaintiffs appeal the case because it "would need guidance from the First Circuit explaining . . . why the claim is potentially viable" to recognize it.

**D.**

Following the District Court's ruling, Doughty and Severance timely filed this appeal on June 21, 2019, in which they challenge the District Court's grant of the Union's 12(b)(6)

---

[3] Although the District Court referred to the plaintiffs' § 1983 claim as being subject to a "good faith defense," it is clear that it was merely holding that an element of their § 1983 claim was proof of "malice," such that their claim must be dismissed if they failed to show that the Union had not acted in "good faith" in collecting the agency fees at issue. See Wyatt, 504 U.S. at 172 (Kennedy, J., concurring).

motion.  We have jurisdiction under 28 U.S.C. § 1291.  We review the District Court's dismissal of a case under Federal Rule of Civil Procedure 12(b)(6) de novo.  See Reisman v. Associated Faculties of Univ. of Me., 939 F.3d 409, 411 (1st Cir. 2019).

## II.

As to the claim for damages, Doughty and Severance ask us to focus on § 1983's text, which expressly provides that "[e]very person" responsible for depriving another of their constitutional rights "shall be liable to the party injured in an action at law," 42 U.S.C. § 1983.  They then proceed to argue that, because Janus applies retroactively and the Union is a proper defendant for the First Amendment violation resulting from its collection of agency fees, there is no basis for denying them a damages remedy against the Union for the federal constitutional violation that they suffered.  For, Doughty and Severance point out, on its face, § 1983 "is absolute and unqualified; no mention is made of any privileges, immunities, or defenses that may be asserted," Owen v. City of Independence, 445 U.S. 622, 635 (1980).

The District Court rightly emphasized, however, that the plaintiffs are seeking damages for a private party's role in imposing a payment requirement on them during a period of time in which the nation's highest court had expressly held that the requirement did not give rise to the First Amendment violation on which their damages claim under § 1983 now depends.  We thus must

attend to the District Court's concern that the recognition of such a damages claim under § 1983 would unduly upset the justifiable reliance interests of the private defendant.

In attending to that concern, we do not embark on a free-wheeling assessment of whether to import into § 1983 a policy based on protection of reliance interests. See Malley v. Briggs, 475 U.S. 335, 342 (1986). Rather, we follow the Supreme Court in recognizing that the text of § 1983 should be read with some consideration of the background against which the statute was enacted and thus with an understanding that the common law's rules "defining the elements of damages and the prerequisites for their recovery[] provide the appropriate starting point for the inquiry under § 1983." Carey v. Piphus, 435 U.S. 247, 257-58 (1978); see also Monroe v. Pape, 365 U.S. 167, 187 (1961) (noting that § 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions"); cf. Heck v. Humphrey, 512 U.S. 477, 483 (1994) (explaining that "to determine whether there is any bar to the present [§ 1983] suit, we look first to the common law of torts"). Moreover, in undertaking that review of the common law to assess the scope of relief available for a claim for a constitutional violation under § 1983, we must keep in mind the Court's observation that if "the interests protected by a particular branch of the common law of torts . . . parallel closely the interests protected by a

particular constitutional right," then it may be "appropriate to apply the tort rules of damages directly," Carey, 435 U.S. at 258, even if that rule is not favorable to the plaintiff, see, e.g., id. at 254-57, 260-62 (relying on principles of common-law damages to conclude substantial nonpunitive damages were unavailable in the absence of proof of real injury).

A number of our sister circuits have followed this approach to assessing the viability of similar retroactive Janus-based damages claims under § 1983, and they have found that such claims closely parallel common-law torts that provide relief for a defendant's misuse of official governmental processes. See Diamond v. Pa. State Educ. Ass'n, 972 F.3d 262, 280 (3d Cir. 2020) (Fisher, J., concurring in the judgment) (collecting cases). They have also recognized that those common-law torts -- abuse of process and malicious prosecution -- require a plaintiff to show malicious or improper use of the process by the defendant. See, e.g., Janus v. Am. Fed. of State, Cnty. & Mun. Emps., 942 F.3d 352, 365 (7th Cir. 2019); see also 54 C.J.S. Malicious Prosecution § 2 (2020) ("The wrongful use of a civil proceeding is a tort which arises when a party institutes a lawsuit with a malicious motive and lacking probable cause."); Pinsky v. Duncan, 79 F.3d 306, 312 (2d Cir. 1996) ("[A]buse of process tort has but two elements: 'first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the

proceeding.'" (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 121, at 898 (5th ed. 1984))). Accordingly, they have rejected retroactive Janus-based claims for damages under § 1983, precisely because Janus had not overruled Abood at the time that the agency fees at issue in them were collected and thus the malicious- or improper-use-of-process element, which the analogy to those common-law torts suggests that Congress intended to be imported into those plaintiffs' § 1983 claims, could not be satisfied. See Diamond, 972 F.3d at 280 (Fisher, J., concurring in the judgment) (collecting cases); see also Wyatt, 504 U.S. at 174 (Kennedy, J., concurring) ("[T]here is support in the common law for the proposition that a private individual's reliance on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable as a matter of law . . . ."); San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 60 (1973) (Stewart, J., concurring) (noting that "one of the first principles of constitutional adjudication" is "the basic presumption of the constitutional validity of a duly enacted state or federal law" (citing James B. Thayer, The Origin and Scope of the American Doctrine of Constitutional Law, 7 Harv. L. Rev. 129 (1893))).

        The Union urges us to follow that same logic here, and thus to find that the District Court correctly held that Doughty and Severance's damages claim fails. In support of our doing so, moreover, the Union points to a substantial body of § 1983

precedent that they contend is directly analogous here. In it, circuits have consistently treated the common-law torts concerning misuse of state processes -- whether the tort of abuse of process or malicious prosecution -- as closely analogous to § 1983 claims for violations of procedural due process that have been brought against private defendants who have availed themselves of state summary process statutes for effecting the seizure of property, whether through attachment or replevin or the like. See, e.g., Pinsky, 79 F.3d at 312; Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1276 & n.31 (3d Cir. 1994); Wyatt v. Cole, 994 F.2d 1113, 1119 (5th Cir. 1993); see also Duncan v. Peck, 844 F.2d 1261, 1267-68 (6th Cir. 1988). To be sure, the constitutional violation that grounds those § 1983 claims is a product of the flawed design of the state-backed summary process that the private defendant relied upon to acquire the plaintiff's property, Wyatt, 504 U.S. at 161-62, and not of the defendant's use of that process for other than its intended purpose. And, in that respect, there is not a perfect match between the interests protected by those common-law torts and the interests protected by the constitutional right to procedural due process that underlies the § 1983 claim in those cases. Nonetheless, that line of authority still holds that such § 1983 claims are properly analogized to these common-law torts, and thus courts consistently have held those claims to be unavailing when they seek damages for a defendant's use of a

summary process statute that was entirely lawful when invoked but that was then retroactively held to violate procedural due process only due to a subsequent change in the law. See, e.g., Wyatt, 994 F.2d at 1120-21.

Notably, Doughty and Severance do not argue that we must reject this line of § 1983 authority concerning challenges to summary process statutes to rule for them in this case. They contend only that this substantial body of § 1983 precedent is distinguishable due to the type of claim that they are bringing under § 1983, such that this line of precedent that is seemingly problematic for them in fact provides no support for the Union's position. That is so, Doughty and Severance contend, both because their § 1983 claim seeks to vindicate a violation of the First Amendment, not the right to procedural due process, and because the Union did not invoke any court-like process in collecting the agency fees, as the plaintiffs in the summary-process-focused § 1983 cases did in acquiring the property at issue in them. Additionally, Doughty and Severance assert that, given the nature of their § 1983 claim, the common-law backdrop of § 1983 in fact cuts in their favor, because if any common-law tort is analogous to the one that they are bringing under that statute, it is the common-law tort of conversion, which permits a plaintiff to recover damages without showing the defendant's malicious or improper use

- 14 -

of any legal process.  But, we are not persuaded by these arguments.

We do not dispute that Doughty and Severance are right that their claim under § 1983 protects against the harm caused by governmentally forced speech and association.  In that respect, it does protect interests quite different from those protected by the common-law torts of malicious prosecution and abuse of process. But, as we have just explained, the constitutional right to procedural due process that underlies the § 1983 claims targeting summary process statutes discussed above protects against a failure of the state to provide enough process, not against the misuse of a process that the state has otherwise properly provided. Yet, it is that latter type of misuse that constitutes the harm against which the common-law torts of abuse of process and malicious prosecution provide protection.  So, there is little force to this asserted point of distinction between Doughty and Severance's § 1983 claim and the body of § 1983 case law concerning summary process statutes.  Rather, their § 1983 claim, like the plaintiffs' § 1983 claims in those cases, is similar to claims for those common-law torts in that it seeks to compensate them for a private party having used a lawful-when-invoked, state-backed process to acquire their property, even though that process was subsequently held to be unlawful due to a change in the law.  See Ogle v. Ohio Civ. Serv. Emps. Ass'n, 951 F.3d 794, 797 (6th Cir.

2020) ("Think about the problem this way. Public-sector unions may enlist the State's help (and its ability to coerce unwilling employees) to carry out everyday functions. But a union that misuses this help, say because the state-assisted action would violate the U.S. Constitution, may face liability under § 1983.").

Finally, while Doughty and Severance are right that their Janus-based § 1983 claim seeks recompense for the invocation of a state-backed process for collecting payments that is distinct from the use of a court process to effect a seizure, we do not see why that distinction is a salient one. Some divergence is to be expected even between a § 1983 claim and a common-law tort that it closely parallels. See Rehberg v. Paulk, 566 U.S. 356, 366 (2012) (explaining that § 1983 is not "simply a federalized amalgamation of pre-existing common-law claims, an all-in-one federal claim encompassing the torts of assault, trespass, false arrest, defamation, malicious prosecution, and more"). Doughty and Severance, however, do not explain -- nor does any explanation occur to us -- why the distinction between the use of an adjudicative process and an administrative one supports the conclusion that the Union should receive less protection for its good-faith reliance on the lawful-when-invoked, state-backed process than the defendants in the summary-process § 1983 cases received for theirs.

We suppose the distinctions that Doughty and Severance point to between their § 1983 claim and the common-law torts of abuse of process and malicious prosecution might have force if there were any indication that the common law was as indifferent to reliance interests in a circumstance like the one at issue here as they impliedly suggest is the case. For, in that event, there would be no reason to be concerned that, in permitting their damages claim to lie, we would be anachronistically reading § 1983 without regard for the common-law understandings that the Supreme Court has made clear informed Congress in enacting that measure. But, Doughty and Severance's attempt to make that case with reference to the common-law tort of conversion -- which does not require a showing of malice and which they contend supplies a more apt analogy to their Janus-based claim -- is not convincing.

As an initial matter, Doughty and Severance provide no support for their implicit premise that a claim for conversion could have been brought at common law for the recovery of a plaintiff's payment of a required fee when the funds used to pay it were comingled with the defendant's other funds following its collection. See 7 Am. Law of Torts § 24:7 (explaining that "before there can be a conversion" of money, there is a "requirement that there be 'ear-marked money or specific money capable of identification'"); 44 A.L.R.2d 927 (1955) ("Money can be the subject of conversion and a conversion action only when it can be

- 17 -

described, identified, or segregated in the manner that a specific chattel can be . . . ."). Nor do they identify a single case in which a claim for conversion was successfully brought at common law for damages arising from the defendant's collection of money payments revealed to have been made pursuant to an illegal requirement only in retrospect, and then only due to the subsequent overruling of a prior Supreme Court precedent under which the requirement was lawful at the time that it was imposed. Their failure on that score is especially conspicuous given how common-law claims for recovering licensing fees and taxes based on the retroactive application of such a sharp change in the law fared. Cf. Diamond, 972 F.3d at 281 (Fisher, J., concurring in the judgment) (describing the "contemporaneous" rule that "a judicial decision either voiding a statute or overruling a prior decision does not generate retroactive civil liability with regard to financial transactions or agreements conducted, without duress or fraud, in reliance on the invalidated statute or overruled decision"); Note, The Effect of Overruled and Overruling Decisions on Intervening Transactions, 47 Harv. L. Rev. 1403, 1404 (1934).

From this review, then, we see no support for concluding that the common law was as indifferent as Doughty and Severance impliedly suggest that it was to the threat to reliance interests posed by affording a damages remedy for a private defendant's acquisition of payments via the invocation of then-lawful state

processes that -- due only to a subsequent change in the law -- retroactively are revealed to have been unlawful.  And, because the Court has reminded us in connection with § 1983 that "[r]ights, constitutional and otherwise, do not exist in a vacuum," Carey, 435 U.S. at 254, we are wary of attributing to the Congress that enacted § 1983 an intent to permit a damages claim to go forward in these most unusual circumstances, just because § 1983 provides that a remedy "at law" "shall be" available for a constitutional violation.

That said, we do recognize that "[t]he purpose of § 1983 would be defeated if injuries caused by the deprivation of constitutional rights went uncompensated simply because the common law does not recognize an analogous cause of action."  See Carey, 435 U.S. at 258.  For that reason, we are mindful that "[i]n applying, selecting among, or adjusting common-law approaches" to the new setting of § 1983, we "must closely attend to the values and purposes of the constitutional right at issue."  Manuel v. City of Joliet, 137 S. Ct. 911, 921 (2017).

But, although Doughty and Severance assert that their claim for damages seeks to vindicate their First Amendment right against compelled speech and association and that this right provides protection from harm that the common law itself did not, they ignore the unusual nature of their attempt to secure relief for the violation of that constitutional right.  They thus develop

no argument -- nor does any occur to us -- why close attention to the values and purposes of the First Amendment right against compelled speech and association supports the conclusion that the Congress that enacted § 1983 must have meant to create a claim for damages for its retroactive violation when the violation results in payments made pursuant to a lawful-when-invoked, state-backed process.

Nor are we persuaded by Doughty and Severance's contention that we must rule in their favor based on Harper v. Virginia Department of Taxation, 509 U.S. 86 (1993), in which the Court held that when it applies a rule of federal law to the parties before it that rule "must be given full retroactive effect in all cases still . . . on direct review." Id. at 97. Insofar as the agency fees at issue here may be analogized to the taxes collected in Harper -- itself a debatable proposition -- Doughty and Severance make no argument that they were precluded from bringing a pre-collection claim challenging the lawfulness of the required payment of agency fees on the ground that Abood should be overruled. As a result, they do not explain how the Supreme Court's retroactivity jurisprudence provides any support for the conclusion that § 1983 provides a remedy for the First Amendment violation that grounds their claim under that statute. See McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, 496 U.S. 18, 38 n.21 (1990) (explaining that the "availability of a

predeprivation hearing" can also "constitute[] a procedural safeguard . . . sufficient by itself to satisfy the Due Process Clause, and taxpayers cannot complain if they fail to avail themselves of this procedure"); see also Nat'l Private Truck Council, Inc. v. Okla. Tax. Comm'n, 515 U.S. 582, 587 (1995) ("As long as state law provides a 'clear and certain remedy,' the States may determine whether to provide predeprivation process (e.g., an injunction) or instead to afford postdeprivation relief (e.g., a refund)." (internal citations omitted) (quoting McKesson Corp., 496 U.S. at 51)).

## III.

Doughty and Severance do separately make a demand for restitution, which is an equitable rather than a legal remedy. And it is true that § 1983 empowers courts to hold a party that violated another's federal rights "liable" in a "suit in equity." 42 U.S.C. § 1983. But, as Doughty and Severance do not plead that the specific agency fees they paid can "clearly be traced to particular funds or property in the [Union's] possession," see Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002), their claim is necessarily "one against the union's treasury generally, not one against an identifiable fund or asset," which makes it inherently legal in nature, Mooney v. Ill. Educ. Ass'n, 942 F.3d 368, 371 (7th Cir. 2019). Accordingly, their restitution claim fails, too.

- 21 -

**IV.**

The judgment of the District Court is **affirmed**.