# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1640
_____

Eric Brown; Jody Tuchtenhagen; Debbie Schultz, on behalf of themselves and others similarly situated,

*Plaintiffs - Appellants*,

v.

American Federation of State, County and Municipal Employees, Council No. 5, AFL-CIO,

*Defendant - Appellee.*

_____

No. 21-1684
_____

Mark Fellows; Alicia Bonner; Catherine Wyatt, on behalf of themselves and others similarly situated,

*Plaintiffs - Appellants*,

v.

Minnesota Association of Professional Employees,

*Defendant - Appellee.*

_____

Appeals from United States District Court
for the District of Minnesota

_____

Submitted: February 16, 2022
Filed: July 25, 2022
_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.
_____

COLLOTON, Circuit Judge.

These are appeals by current and former Minnesota state employees who seek damages for money deducted from their paychecks by unions that represented their local bargaining units. Although the Supreme Court held the deduction practice unlawful in *Janus v. American Federation of State, County, & Municipal Employees*, 138 S. Ct. 2448 (2018), the district court[*] determined that the unions acted in good-faith reliance on state statutes and existing judicial precedent. Accordingly, the court ruled that the unions were entitled to a defense to liability under 42 U.S.C. § 1983, and dismissed the employees' claims. We agree, and therefore affirm.

Minnesota law permits public employees to bargain collectively with the State by designating a labor union to serve as the exclusive representative for employees in their bargaining unit. Minn. Stat. § 179A.06, subdiv. 2. Employees may decline to join the union. *Id.* If an employee chooses not to join, however, state law permits the union to require the employee to contribute a so-called "fair-share" fee equal to the cost of membership dues, less the cost of benefits available only to members. *Id.*, subdiv. 3. The statute caps these fees at eighty-five percent of what the union charges for regular membership dues. *Id.* To collect fees from a non-member employee, the union must send a written notice to the employee's public employer, at which point

_____

[*]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

the employer is required to "deduct the fee from the earnings of the employee and transmit the fee" to the union after thirty days. *Id.*

In *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), the Supreme Court held that a similar regime permitting public-sector unions to compel the payment of fees from state employees who chose not to join the unions did not violate the First Amendment free speech rights of the employees. The Court concluded that the unions could extract fair-share fees from non-members so long as the fees were used to fund projects "germane to [the unions'] duties as collective-bargaining representative," rather than ideological or political causes. *Id.* at 235-36. Forty-one years later in *Janus*, the Supreme Court overruled *Abood*. 138 S. Ct. at 2460. The Court held that public-sector unions violated the First Amendment by deducting fair-share fees from non-member employees without first obtaining affirmative consent from the employees. *Id.* at 2486.

The employees allege that between May 2014 and the 2018 decision in *Janus*, the unions representing their bargaining units unconstitutionally deducted fair-share fees from their paychecks. The employees sued the unions under § 1983 on behalf of themselves and a putative class, and sought damages equal to the amounts deducted from their paychecks before *Janus*. The unions moved to dismiss the complaint. The unions did not dispute that collecting these fees ran afoul of the rule announced in *Janus*. But the unions asserted that for deductions taken until *Janus* was decided, they were entitled to rely "in good faith upon then-valid Minnesota law and then-binding Supreme Court precedent in receiving Plaintiffs' fair-share fees payments."

The district court granted the motions to dismiss. Joining "every court to consider the issue," the court concluded "that private actors who act in good faith reliance on a state statute and Supreme Court case law holding that statute constitutional have an affirmative defense to § 1983 liability." The court concluded

-3-

that "[t]he Unions' reliance on [§ 179A.06] was supported by *Abood* and forty years of precedent," and that the employees had not alleged that the unions acted in bad faith. The employees appeal, and argue that there is no good-faith defense to liability for damages under § 1983.

Although this court has yet to address whether private parties sued under § 1983 may invoke a good-faith defense, the issue has been much discussed elsewhere. The Supreme Court broached the topic in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), a case holding that certain private actors could be subject to suit under § 1983 for acting under color of state law. *Id.* at 941-42. Responding to a concern that a private individual might be held liable for innocent reliance on a state law that was only later declared unconstitutional, *see id.* at 955-56, 956 n.14 (Powell, J., dissenting), the Court said that "this problem should be dealt with not by changing the character of the cause of action but by establishing an affirmative defense." *Id.* at 942 n.23 (opinion of the Court). But because the question of a defense was not before it, the Court left the issue for another day. *Id.*

A decade later, the Court raised the possibility again. In *Wyatt v. Cole*, 504 U.S. 158 (1992), the Court held that private actors subject to suit under § 1983 could not invoke qualified immunity. *Id.* at 168-69. At the same time, however, the Court did "not foreclose the possibility that private defendants faced with § 1983 liability . . . could be entitled to an affirmative defense based on good faith and/or probable cause or that § 1983 suits against private, rather than governmental, parties could require plaintiffs to carry additional burdens." *Id.* at 169.

In separate opinions, a majority of the Justices found support for a good-faith defense in the common law, and suggested that the defense would be available on remand. *See id.* at 172-75 (Kennedy, J., concurring); *id.* at 176-77 (Rehnquist, C.J., dissenting). Two Justices concluded that there was "support in the common law for the proposition that a private individual's reliance on a statute, prior to a judicial

-4-

determination of unconstitutionality, is considered reasonable as a matter of law." *Id.* at 173-74 (Kennedy, J., concurring). Three others believed that the defendants could prevail if "their reliance on the . . . statute was objectively reasonable for someone with their knowledge of the circumstances." *Id.* at 178 (Rehnquist, C.J., dissenting). These two opinions debated whether a showing of subjective bad faith by the defendant would obviate the defense.

On remand, the Fifth Circuit concluded that the separate opinions in *Wyatt* "largely answered" the question whether a defendant in a § 1983 action may assert a good-faith defense. The court held "that private defendants sued on the basis of *Lugar* may be held liable for damages under § 1983 only if they failed to act in good faith in invoking the unconstitutional state procedures." *Wyatt v. Cole*, 994 F.2d 1113, 1118 (5th Cir. 1993).

Since *Wyatt*, seven more circuits have recognized a good-faith defense for private parties who relied on a presumptively valid state statute when they allegedly deprived a plaintiff of constitutional rights. Each of these courts has held that the defense barred a claim against a public-sector union to recover fair-share fees collected before *Janus*. *See Akers v. Md. State Educ. Ass'n*, 990 F.3d 375, 382 (4th Cir. 2021); *Doughty v. State Emps.' Ass'n of N.H.*, 981 F.3d 128, 130, 132 n.3 (1st Cir. 2020); *Diamond v. Pa. State Educ. Ass'n*, 972 F.3d 262, 271 (3d Cir. 2020) (opinion of Rendell, J.); *id.* at 284 (Fisher, J., concurring in the judgment); *Wholean v. CSEA SEIU Loc. 2001*, 955 F.3d 332, 334-36 (2d Cir. 2020); *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 391 (6th Cir. 2020); *Danielson v. Inslee*, 945 F.3d 1096, 1098-99 (9th Cir. 2019); *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps.*, 942 F.3d 352, 364-66 (7th Cir. 2019). No circuit has ruled otherwise.

Challenging this consensus, the employees rely on the text of § 1983. The statute provides that "[e]very person" who acts under color of state law to deprive another of his constitutional rights "shall be liable to the party injured in an action at

law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. The employees argue that a defense predicated on a defendant's good faith would undermine the promise of a remedy for "every person" whose rights are violated. They urge that this court may not depart from the statutory text and "create immunities based solely on our view of sound policy." *Rehberg v. Paulk*, 566 U.S. 356, 363 (2012).

While federal courts may not "make a freewheeling policy choice" to graft a defense onto § 1983, *Malley v. Briggs*, 475 U.S. 335, 342 (1986), a court properly may read § 1983 against the background of tort liability as it existed when the statute was enacted. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258 (1981). That approach considers the common-law torts that are most analogous to the claim at issue. *Wyatt*, 504 U.S. at 163-64. Although § 1983 is not "simply a federalized amalgamation of pre-existing common-law claims," *Rehberg*, 566 U.S. at 366, it is sometimes appropriate for "a court to adopt wholesale the rules that would apply in a suit involving the most analogous tort." *Manuel v. City of Joliet*, 137 S. Ct. 911, 920 (2017). Where a § 1983 claim "implicates the same concerns" as an analogous common-law claim, *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019), and the rule governing the common-law claim "is consistent with 'the values and purposes of the constitutional right at issue,'" *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022) (quoting *Manuel*, 137 S. Ct. at 921), there is a good reason to think that Congress would have expected the common-law principles to govern the § 1983 claim.

Several circuits have deemed § 1983 actions alleging *Janus* violations analogous to common-law actions for abuse of process or malicious prosecution. *See Doughty*, 981 F.3d at 134. The employees resist this line of authority and suggest that "[a] First Amendment claim for compelled subsidization of speech has no common law equivalent." But if forced to choose among common-law analogues, they say that the strict-liability tort of conversion is the better match.

We think the analogy to conversion is strained. Conversion is the wrongful interference with a plaintiff's right to control a chattel. *See* Thomas M. Cooley, *A Treatise on the Law of Torts* 447-48 (1879); *see also* Restatement (Second) of Torts § 222A (Am. L. Inst. 1965). Here, the source of the constitutional injury is not interference with the employees' rights to control their money. Rather, the injury arises from the unions' ability to compel the employees to speak through their contributions in support of a cause that they do not wish to endorse. *See Akers*, 990 F.3d at 382; *Danielson*, 945 F.3d at 1102.

The employees' claims are more comparable to the torts of abuse of process and malicious prosecution. At root, these torts concern the misuse of state procedures for an improper or unlawful end. Abuse of process, for example, occurs when an actor "willfully" uses legal process "for a purpose not justified by the law." Cooley, *supra*, at 185, 189-90. Here, Minn. Stat. § 179A.06 allowed public-sector unions to enlist the State's coercive power and collection procedures to deduct fees from the employees' pay. The crux of the employees' claim is that the unions deployed these processes for an unconstitutional purpose—to subsidize union speech. *Ogle v. Ohio Civ. Serv. Emps. Ass'n*, 951 F.3d 794, 797 (6th Cir. 2020) (per curiam).

At common law, both abuse of process and malicious prosecution required a plaintiff to show malice—that is, an improper purpose for bringing the action or using the process. W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 119, at 870-71 (5th ed. 1984); *id.* § 121, at 897-98; Cooley, *supra*, at 185-90. Malicious prosecution further required the plaintiff to show that the defendant instituted proceedings without reasonable grounds for doing so. Keeton et al., *supra*, § 119, at 870-71, 876; Cooley, *supra*, at 184-85.

We agree with other circuits that a § 1983 plaintiff bringing an analogous suit should be required to make a similar showing of malice. *See Doughty*, 981 F.3d at 134-35. Therefore, a plaintiff who sues a private-party defendant based on the

-7-

defendant's employment of a state law that has been declared unconstitutional must show that the defendant was not acting in good-faith reliance on that law. Strictly speaking, it may be "something of a misnomer to describe the common law as creating a good-faith *defense*," but the label is "a useful shorthand" that captures the burden that the common law suggests a plaintiff should bear in such an action. *Wyatt*, 504 U.S. at 176 n.1 (Rehnquist, C.J., dissenting); *id.* at 172 (Kennedy, J., concurring); *see Doughty*, 981 F.3d at 132 n.3. By requiring the plaintiff to negate a private-party defendant's good faith as an element of his or her claim, the "defense" protects parties who "unwittingly cross [the] line" into unconstitutionality while acting "in reliance on a presumptively valid state law—those who had good cause in other words to call on the governmental process in the first instance." *Ogle*, 951 F.3d at 797.

In an effort to overcome the defense, the employees assert that the unions should have predicted that the Supreme Court would overrule *Abood* and declare the collection of fair-share fees unconstitutional. But rumblings that members of the Court were unhappy with existing precedent, *e.g.*, *Harris v. Quinn*, 573 U.S. 616, 635-638 (2014), are "hardly unique to this area," and even overt judicial signals sometimes do not result in the overruling of the precedent in question. *Janus*, 942 F.3d at 366 (citing *Dickerson v. United States*, 530 U.S. 428 (2000)). "The Rule of Law requires that parties abide by, and be able to rely on, what the law *is*, rather than what the readers of tea-leaves predict that it might be in the future." *Id.* The employees do not allege that the unions subjectively believed that they were violating the rights of the employees, so we need not address whether such a showing would overcome the unions' objectively reasonable reliance on the statute in question. *Compare Wyatt*, 504 U.S. at 173-74 (Kennedy, J., concurring), *with id*. at 177-78 (Rehnquist, C.J., dissenting).

The employees further maintain that even if a good-faith defense exists, the defense should be confined to procedural due process violations, where malice or lack of probable cause are elements of the constitutional tort. As support for this

proposition, they assert that the earliest cases to recognize the defense involved alleged due process violations. *See Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1276 (3d Cir. 1994); *Wyatt*, 994 F.2d at 1121. The employees say this "claim-specific" defense should not extend to their *Janus* claims, because "malice and lack of probable cause are not elements of, or a defense to, a First Amendment deprivation."

The trouble with this argument is that malice and lack of probable cause are not elements of a procedural due process violation either. *See Stevenson v. Blytheville Sch. Dist. No. 5*, 800 F.3d 955, 965-66 (8th Cir. 2015). A due process claim concerns the inadequacy of the procedures afforded the plaintiff, rather than the misuse of those procedures. *Doughty*, 981 F.3d at 135. There ordinarily is no requirement that a plaintiff show that officials who established or implemented those procedures acted with malice or without cause. Yet the generally accepted analogies for § 1983 actions against private-party defendants who used constitutionally deficient attachment or replevin procedures are the torts of abuse of process or malicious prosecution. *See id.* at 134-36 (collecting cases). This is so because the § 1983 employees, like employees in suits for the common-law torts, sought compensation for a private party's use of state-backed processes to acquire the employees' property. *Id.* While not a "perfect match," the resemblance was close enough to justify importing a good-faith requirement for a procedural due process claim brought under § 1983. *Id.* The same analogy applies where the use of state-backed processes results in a violation of the First Amendment rather than the Due Process Clause.

Finally, the employees assert that the good-faith defense is inconsistent with principles of retroactivity. Generally, when the Supreme Court applies a rule, "that rule is the controlling interpretation of federal law and must be given full retroactive effect." *Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993). But the retroactivity of a decision acknowledging a federal right is distinct from the availability of a remedy for a past violation of that right. While reliance interests alone cannot be

used to circumvent a decision's retroactive reach, a "general legal rule" that "reflects *both* reliance interests and other significant policy justifications" may trump a new rule of law and prevent liability from attaching. *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758-59 (1995). The Court cited qualified immunity as an example. Even assuming the right recognized in *Janus* applies retroactively, the good-faith defense qualifies as another such "general legal rule."

In sum, because the unions collected fair-share fees under Minn. Stat. § 179A.06 at a time when the procedure employed had been deemed constitutional by the Supreme Court, their reliance on the statute was objectively reasonable, and they are entitled to a good-faith defense. Even if subjective intent were deemed relevant, the employees have pleaded no facts to support a plausible inference that the unions collected these fees in subjective bad faith. The good-faith defense thus bars the employees' claims for damages.

The judgments of the district court are affirmed.

_____