ORDER

PER CURIAM.
Upon consideration of appellant’s petition for rehearing en banc, the response thereto, and the absence of a request by any member of the court for a vote, it is
ORDERED that the petition be denied.
ROGERS, Circuit Judge, concurring in the denial of rehearing en banc:
I write regarding Judge Kavanaugh’s critique today of a related case, United States v. Epps, 707 F.3d 337 (D.C.Cir.2013). Our decision in Epps adhered to the interpretation of Marks v. United States, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), adopted by the en banc court in King v. Palmer, 950 F.2d 771 (D.C.Cir.1991), which is binding on the court. See LaShawn A. v. Barry, 87 F.3d 1389, 1395 (D.C.Cir.1996) (en banc). Any “seriously flawed application of the Marks principle,” Kavanaugh Op. at 609, if present, is thus to be found in King v. Palmer, not Epps. Critiquing Epps because “Marks means that, when one of the opinions in a splintered Supreme Court decision has adopted a legal standard that would consistently produce results with which a majority of the Court in that case necessarily would agree, that opinion controls,” Kavanaugh Op. at 606-07, is a direct challenge to King v. Palmer.
I.
As examined at length in Epps, 707 F.3d at 348-51, King v. Palmer precluded adoption of the interpretation of Marks followed in other circuits that have declared binding Justice Sotomayor’s concurring opinion in the splintered decision in Freeman v. United States,— U.S.-, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011). In King v. Palmer, the en banc court interpreted Marks to mean that, to be binding as representing the narrowest grounds for decision, an opinion “must represent a common denominator of the Court’s rea- *605 sowing; it must embody a position implicitly approved by at least five Justices who support the judgment.” 950 F.2d at 781 (emphasis added). Under Marks’ “narrowest grounds” approach, for an opinion to be controlling it must contain a “controlling rationale.” Id. at 781 n. 6. “Marks is workable ... only when one opinion is a logical subset of other, broader opinions.” Id. at 781. Otherwise, the en banc court reasoned, “[i]f applied in situations where the various opinions supporting the judgment are mutually exclusive, Marks will turn a single opinion that lacks majority support into national law.” Id. at 782. So, “[wjhen ... one opinion supporting the judgment does not fit entirely within a broader circle drawn by the others, Marks is problematic.” Id. According to the en banc court, Marks applies when “the concurrence posits a narrow test to which the plurality must necessarily agree as a logical consequence of its own, broader position.” Id. (emphasis added); see also Epps, 707 F.3d at 348 (quoting same).
King v. Palmer expressed no ambivalence regarding either its general holding on the proper understanding of Marks ’ “narrowest grounds” rule as requiring a binding opinion to evidence a common rationale and not only a common outcome, or its specific holding that, under its interpretation of Marks, in the absence of compatible reasoning by a majority in a splintered Supreme Court decision, “the appropriate course is to hold that contingency enhancements [to plaintiffs’ counsel’s award of attorneys’ fees] will not be available in this circuit.” King v. Palmer, 950 F.2d at 784 (addressing the “splintered decision” in Pennsylvania v. Delaware Valley Citizens’ Council for Clean Air, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (“Delaware Valley II”), and reversing this court’s precedent in McKenzie v. Kennic-kell, 875 F.2d 330 (D.C.Cir.1989), and portions of previous inconsistent opinions).
The en banc court emphasized that a concurring opinion widely assumed to be controlling due to the perceived presence of some sphere of outcome-determined “common ground” constituted only persuasive authority. Id. at 775-77. It identified “three distinct approaches to the issue of contingency enhancements in fee-shifting statutes, none of which enjoys the support of five Justices.” Id. at 782. Given that the Supreme Court had denied a contingency enhancement without a remand in Delaware Valley II, the court acknowledged that it “could not authorize the routine awarding of contingency enhancements of whatever size,” id. at 784, but determined there was no “narrowest opinion” to be derived from the plurality and concurring opinions because “there simply is no practical middle ground between providing enhancements routinely and not providing them at all,” id. Then, “Keeping in mind that a majority of the Supreme Court clearly agrees that the question of attorneys’ fees must not turn into major litigation in itself,” the en banc court adopted its own view of “the appropriate course.” Id. (rejecting “various tests for awarding contingency enhancements” under Delaware Valley II adopted by the other circuits because “most of the tests appear to be difficult, if not impossible, to meet in practice”).
II.
Epps required the court to interpret a splintered Supreme Court decision to determine if a defendant sentenced pursuant to a Rule 11(c)(1)(C) plea agreement was eligible for a sentencing reduction under 18 U.S.C. § 3582(c)(2). Application of the Marks rule adopted in King v. Palmer to the Supreme Court’s splintered 4-1-4 decision in Freeman revealed that Justice So-tomayor’s concurring opinion cannot be understood to be the “narrowest grounds” *606 of the majority’s ruling, and therefore ought not be treated as controlling.[1] Epps explained: “The plurality opinion [in Freeman] rejected] the concurring opinion’s approach, stating its rationale is fundamentally incorrect because § 3582(c)(2) ‘calls for an inquiry into the reasons for a judge’s sentence, not the reasons that motivated or informed the parties.’ ” 707 F.3d at 350 (quoting Freeman, 131 S.Ct. at 2694 (plurality opinion) (labeling the concurrence’s rationale an “erroneous rule”)). The dissenting opinion “agree[d] with the plurality that the approach of the concurrence ... is arbitrary and unworkable” and even “wrong.” Freeman, 131 S.Ct. at 2703 (dissent). In light of King v. Palmer, the only controlling holding evident from Freeman is that courts cannot categorically bar defendants sentenced pursuant to Rule 11(c)(1)(C) plea agreements from eligibility for a sentencing reduction under § 3582(c)(2). See Epps, 707 F.3d at 351.
Consequently, the Epps court had to determine, as the en banc court instructed, which reasoning represented “the appropriate course,” King v. Palmer, 950 F.2d at 784. The Freeman plurality had observed that “the statute ... calls for an inquiry into the reasons for a judge’s sentence, not the reasons that motivated or informed the parties,” and that the concurrence, “[b]y allowing modification only where the terms of the agreement contemplate it ... would permit the very disparities that the Sentencing Reform Act seeks to eliminate.” Freeman, 131 S.Ct. at 2694. The Freeman dissent, on the other hand, despaired of being able to determine, where a judge approved the parties’ agreed-upon fixed-term sentence under Rule 11(c)(1)(C), what the sentence was “based on,” id. at 2703 (dissent) (quoting § 3582(c)(2)), a circumstance not present in Epps, 707 F.3d at 352 (citing United States v. Epps, 756 F.Supp.2d 88, 92-93 (D.D.C.2010)). This court adhered to the plurality’s interpretation in view of the purpose of the Sentencing Act to reduce unwarranted disparities, Rule ll(c)(1)(C)’s requirement that the sentencing judge approve the plea agreement, and instructions in applicable Sentencing Guidelines policy statements. Epps, 707 F.3d at 351-53. (The third member of the panel concluded the issue of Epps’ entitlement to sentencing relief was moot. Id. at 353 (Brown, J., dissenting)). In so doing, Epps also followed the approach adopted in United States v. Berry, 618 F.3d 13 (D.C.Cir.2010), where this court relied on the Guidelines policy statement 1B1.10, which the Freeman plurality explained “seeks to isolate whatever marginal effect the since-rejected Guidelines had on the defendant’s sentence,” thereby “permitting the district court to revisit a prior sentence to whatever extent the sentencing range ... was a relevant part of the analytic framework the judge used to determine the sentence or to approve the [Rule 11(c)(1)(C)] agreement.” 131 S.Ct. at 2692-93.
The three asserted errors in Epps are non-existent: First, Epps did not adopt “a novel standard for Marks cases.” Kava-naugh Op. at 612. Instead, the court correctly concluded that “[u]nder Marks [as interpreted in King v. Palmer] ... there is no controlling opinion in Freeman because the plurality and concurring opinions do not share common reasoning whereby one analysis is a ‘logical subset,’ King, 950 F.2d at 781, of the other.” Epps, 707 F.3d at 350 (emphasis added for text omitted by Judge Kavanaugh).
*607 Second, a suggestion in the concurring opinion in United States v. Duvall, 705 F.3d 479 (D.C.Cir.2013), regarding possible “weak” or “strong” readings of King v. Palmer, see Duvall, 705 F.3d at 485-86 (Williams, J., concurring), cannot change the en banc court’s unambiguous holding on the proper interpretation of Marks’ “narrowest grounds.” See Kavanaugh Op. at 614. Nevertheless, Epps addressed the suggested “weak reading,” anticipatorily explaining why the concurring opinion in Freeman still would not be deemed controlling. The court referred under the “weak” reading to the circumstance (as contemplated by the plurality in Freeman, 131 S.Ct. at 2694) in which the concurrence in Freeman would grant relief and the plurality would not. See Epps, 707 F.3d at 350-51 & n. 8. Other courts appear not to have considered this circumstance, see, e.g., United States v. Rivera-Martinez, 665 F.3d 344, 348 (1st Cir.2011); see also In re Sealed Case, 722 F.3d 361, 365-66 (D.C.Cir.2013) (dictum).
Third, Epps did not “misappl[y] the ‘Marks corollary’ that necessarily governs in cases where there is no one narrowest opinion.” Kavanaugh Op. at 616. As described by Judge Kavanaugh, that corollary requires a court to “run the facts and circumstances of the current case through the various tests articulated by the Supreme Court in the binding case.” Id. at 616. Whatever its merits, the en banc court never endorsed this corollary to Marks, but adhered to its “subset” analysis. King v. Palmer, 950 F.2d at 784 & n. 7; see also id. at 781-82. None of the Supreme Court cases cited by Judge Kava-naugh in discussing vertical stare decisis, Kavanaugh Op. at 611-12, includes a binding instruction adopting his Marks corollary.[2] So, this court must follow the approach adopted by the en banc court— identifying “the appropriate course,” King v. Palmer, 950 F.2d at 784 — which Epps identified in terms of the undisputed purpose of the Sentencing Reform Act, the plain texts of Rule 11(c)(1)(C) and the Sentencing Guidelines policy, and our own § 3582(c)(2) precedent relying on the policy statement.
Properly understood, Judge Kava-naugh’s objection is to the interpretation of Marks adopted by the en banc court in King v. Palmer. In disagreeing with the result in Epps, he revives objections reminiscent of the dissent in King v. Palmer, 950 F.2d at 789 (dissent), but the three-judge panel in Epps was not free to agree with this position. Judge Williams, concurring in the denial of en banc in Duvall, elaborates' on why Judge Kavanaugh’s criticism of the en banc court’s interpretation of Marks may lack traction and rebuts his criticisms of Epps. Regardless, because the en banc decision in King v. Palmer is binding, the suggestion that the court in Epps acted other than consistently with its constitutional obligation is without merit.

. In United States v. Duvall, by contrast, the court accepted the parties' stipulation that Justice Sotomayor's concurring opinion was controlling. 705 F.3d 479, 483 (D.C.Cir.2013).

. In O’Dell v. J.D. Netherland, 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997), see Kavanaugh Op. at 612-13, a capital case, the Supreme Court discussed another capital case, Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), in which the concurring opinion appears to be consistent with King v. Palmer’s “subset” interpretation of the Marks rule. See O’Dell, 521 U.S. at 174-75, 117 S.Ct. 1969 (dissent) (pointing out that the Gardner opinion identified in O’Dell as "the narrow one” embraced the due process rationale of the Gardner plurality).