**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2172
_____

DAVID SCHASZBERGER; BRADFORD SCHMITTLE; KYLE CLOUSE;
COLBY CONNER; JEANETTE HULSE; GARY LANDIAK,
                                                        Appellants

v.

AMERICAN FEDERATION OF STATE COUNTY
AND MUNICIPAL EMPLOYEES COUNCIL 13

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3-19-cv-01922)
District Judge: Honorable Malachy E. Mannion

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1
on February 10, 2022

Before: GREENAWAY, JR., SCIRICA, and RENDELL, *Circuit Judges.*

(Filed: July 20, 2022)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**SCIRICA**, *Circuit Judge*

This case arises out of the Supreme Court's decision in *Janus v. American Federation of State, County, and Municipal Employees Council 31*, 138 S. Ct. 2448 (2018), in which the Court held that the collection of agency shop fees from nonconsenting employees by the state or public-sector unions was a violation of the First Amendment. American Federation of State, County and Municipal Employees Council 13 ("AFSCME"), a Pennsylvania public-sector union, was a union that had previously been collecting these "fair-share" fees, pursuant to then-binding Supreme Court precedent and Pennsylvania state law. Appellants, non-AFSCME members who worked in units represented by AFSCME, were subject to these fees. After the Supreme Court found these fees to be unconstitutional, Appellants filed this putative class action to recover the fair-share fees AFSCME collected from them prior to the *Janus* decision. The District Court granted AFSCME's motion to dismiss, finding AFSCME was shielded from liability by virtue of its good faith reliance on then-controlling Supreme Court precedent and state law. Because we find AFSCME was entitled to a good faith defense, we will affirm.

I.

Labor laws in the United States authorize employers and labor organizations to bargain for an "agency shop." *Diamond v. Pa. State Educ. Ass'n*, 972 F.3d 262, 265 (3d Cir. 2020). An agency shop arrangement permits a union to exclusively represent an entity's employees on the condition that the union represent all of the entity's employees,

2

even those who do not join the union.  *Id.* at 265–66.  Because agency shop arrangements can create an incentive for employees to decline to join their union and avoid paying dues

> while still accruing the benefits of union representation . . . . Congress often allowed unions and employers who opt for an agency shop arrangement to require all employees either to join the union and pay dues or, if an employee does not join the union, to nonetheless contribute to the costs of representation, bargaining, and administration of bargaining agreements.

*Id.* at 266.

These mandated contributions are known as "fair-share" fees.  For decades, the Supreme Court consistently upheld the constitutionality of fair-share fees.  *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 224–26 (1977).

Like many states, Pennsylvania enacted a law providing that "[i]f the provisions of a collective bargaining agreement so provide, each nonmember of a collective bargaining unit shall be required to pay to the exclusive representative a fair share fee."  71 Pa. Stat. Ann. § 575.  AFSCME is a government employee union that served as the exclusive representative for several bargaining units throughout Pennsylvania, including Appellants' units.  In 2016, pursuant to 71 Pa. Stat. Ann. § 575, AFSCME negotiated a Master Agreement with Pennsylvania for the collection of service fees from nonmember employees, which provided:

> The Employer further agrees to deduct a fair share fee biweekly from all employees in the bargaining unit who are not members of the Union. Authorization from non-members to deduct fair share fees shall not be required.  The amounts to be deducted shall be certified to the Employer by the Union and, the aggregate deductions of all employees shall be remitted together with an itemized statement to the Union by the last day of the succeeding month, after such deductions are made.

App. 09–10.

But in 2018, the Supreme Court reversed its views with respect to fair-share fees and overruled *Abood* in *Janus*. The Court held "the First Amendment does not permit the government to compel a person to pay for another party's speech just because the government thinks that the speech furthers the interests of the person who does not want to pay." 138 S. Ct. at 2467. This decision rendered statutes like 71 Pa. Stat. Ann. § 575 unconstitutional, meaning states and public-sector unions could no longer extract agency fees from nonconsenting employees. After the Court issued this decision, AFSCME promptly ceased its collection of fair-share fees.

During the relevant time, Appellants were state employees whose jobs fell within a classification covered by AFSCME but who were not dues-paying members of the union. Prior to *Janus*, AFSCME collected fair-share fees from Appellants. As noted, Appellants filed a suit on November 7, 2019, under 42 U.S.C. § 1983 on behalf of themselves and a putative class of similarly situated employees, contending they should be able to recover the fair-share fees AFSCME collected from them prior to *Janus*.

The trial judge granted AFSCME's motion to dismiss. In dismissing Appellants' claims, the trial judge held "unions sued for a refund of pre-*Janus* fair-share fees can assert the good-faith defense." App. 22. Accordingly, the trial judge found that because AFSCME relied in good faith on both a Pennsylvania state statute and unambiguous Supreme Court precedent in extracting these fees, the good faith defense shielded it from liability for Appellants' claims under § 1983. Appellants appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have

4

appellate jurisdiction under 28 U.S.C. § 1291. We review a District Court's grant of a motion to dismiss de novo. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008). In considering a motion to dismiss, we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

## III.

This is not the first time such a case has come before us. In *Diamond v. Pennsylvania State Education Association*, 972 F.3d 262 (3d Cir. 2020), the plaintiff made allegations substantially similar to the ones brought by Appellants. A divided panel of our colleagues found for the *Diamond* union and affirmed the trial judge's grant of the motion to dismiss. *Id.* at 265. Judge Rendell concluded the *Diamond* union was entitled to a good faith defense, because "private defendants should not be held liable under § 1983 absent a showing of malice and evidence that they either knew or should have known of the statute's constitutional infirmity." *Id.* at 270 (quoting *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1276 (3d Cir. 1994)). Judge Fisher concurred in the judgment, but disagreed with Judge Rendell's reasoning. *Id.* at 274 (Fisher, J. concurring). Instead, Judge Fisher found the *Diamond* union was entitled to a specific defense available at common law that exempted the union from liability absent a showing of fraud or duress. *Id.* at 284–85. Judge Phipps dissented, finding "a good faith affirmative defense" did not exist for this type of § 1983 claim because the defense was not firmly rooted at common law. *Id.* at 285 (Phipps, J., dissenting).

5

We are bound by decisions of this Court, and accordingly, must decide if an opinion in *Diamond* controls here. *See Montgomery Cnty. v. MicroVote Corp.*, 175 F.3d 296, 300 (3d Cir. 1999). The Third Circuit has "no specific rules for how to identify the holdings and legal standards" for split opinions in which no majority agrees on both the holding and the reasoning. *Holloway v. Att'y Gen.*, 948 F.3d 164, 170 (3d Cir. 2020). But the Supreme Court has provided instructions on how to identify the controlling standards in their own split decisions, which guide our opinion.[1]

In *Marks v. United States*, the Supreme Court instructed that when there is a divided court, and no single rationale receives a majority vote, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976)). We have interpreted the *Marks* rule to mean that "[w]hen sorting out a fractured decision of the Court, the goal is 'to find a single legal standard' that 'produce[s] results with which a majority of the [Court] in the case articulating the standard would agree.'" *Binderup v. Att'y Gen.*, 836 F.3d 336, 356 (3d Cir. 2016) (en banc) (quoting *United States v. Donovan*, 661 F.3d 174, 182 (3d Cir. 2011)).

As noted, Judge Rendell and Judge Fisher applied different legal standards to find for the *Diamond* union. Because Judge Fisher's vote was necessary for the judgment, Judge Rendell's opinion is "*not* a majority opinion except to the extent that it accords with [Judge Fisher's] views." *B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293,

---

[1] We have previously looked to *Marks v. United States*, 430 U.S. 188 (1977) and its progeny for guidance on how to read split opinions. *See Holloway*, 948 F.3d at 170.

310 (3d Cir. 2013) (quoting *McKoy v. North Carolina*, 494 U.S. 433, 462 n.3 (1990) (Scalia, J., dissenting)). But Judge Fisher found for the *Diamond* union on an entirely separate ground, so his rationale does not provide the "least common denominator necessary to maintain a majority opinion" between Judge Rendell and Judge Fisher. *B.H.*, 725 F.3d at 311; *see also id.* at 310 ("[The] linchpin justice's opinion 'cannot add to what the majority opinion holds' by 'binding the other [] justices to what they have not said' because his views would not be the narrowest grounds." (quoting *McKoy*, 494 U.S. at 462 n.3 (Scalia, J., dissenting))); *King v. Palmer*, 950 F.2d 771 (D.C. Cir. 1991) (en banc) ("[T]he narrowest opinion must represent a common denominator of the Court's reasoning; it must embody a position implicitly approved by at least five Justices who support the judgment."); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1336–37 (D.C. Cir. 2015) (Kavanaugh, J.) (finding no opinion could be "the *Marks* middle ground or narrowest opinion" where the Justices who concurred in the judgment adopted different legal formulations).

The only common denominator in the *Diamond* majority is the ultimate outcome of the case, and thus we are not bound by the reasoning of either opinion. *See Anker Energy Corp. v. Consolidation Coal Co.*, 177 F.3d 161, 170 (3d Cir. 1999) ("[I]n cases where approaches differ, no particular standard is binding on an inferior court because none has received the support of a majority . . . ."); *United States v. Guillen*, 995 F.3d 1095, 1115 (10th Cir. 2021) ("[Where] there is no discernable implicit consensus or common denominator among the Justices who support the Court's judgment . . . we do

7

not apply *Marks*.").[2]

Appellants urge us to read Judge Fisher's and Judge Phipps's opinions regarding the lack of a good faith defense as controlling precedent. We have previously "looked to the votes of dissenting Justices if they, combined with votes from plurality or concurring opinions, establish a majority view on the relevant issue." *United States v. Donovan*, 661 F.3d 174, 182 (3d Cir. 2011) (collecting cases). But even in these cases, the cobbled-together collective is only persuasive, rather than binding, authority. *United States v. Richardson*, 658 F.3d 333, 340 (3d Cir. 2011). Accordingly, while the three opinions in *Diamond* should be considered for their persuasive value, we believe none constitutes binding authority here.

IV.

Because *Diamond* does not control our decision here, we turn to the question of whether Appellee is entitled to a good faith defense. We hold a good faith defense exists, where, as here, Appellee relied on then-controlling Supreme Court precedent and state law.

---

[2] In *United States v. Duvall*, 740 F.3d 604 (D.C. Cir. 2013), then-Judge Kavanaugh discussed the rare circumstance where there is "no 'narrowest' opinion that would identify how a majority of the Supreme Court would resolve all future cases" because no opinion has "adopted a legal standard that would produce results with which a majority of the Court in that case necessarily would agree." *Id.* at 611 (Kavanaugh, J., concurring). *Diamond* is one such circumstance. To the extent Justice Kavanaugh would encourage us to "decide the case . . . in a way consistent with how the [Court]'s opinions in the relevant precedent would resolve the current case," by "run[ning] the facts and circumstances . . . through the tests articulated in the Justices' various opinions in the binding case and adopt[ing] the result that a majority of the [Court] would have reached," *id.*, we would reach the same result. We note this portion of our opinion is an alternative holding.

8

42 U.S.C. § 1983 provides a cause of action for persons who have been deprived of "any rights, privileges, or immunities secured by the Constitution" under color of state law. A private party may be liable under § 1983 if it "deprived the plaintiff of a constitutional right by exercising 'a right or privilege having its source in state authority' and where the private-party defendant may be 'appropriately characterized as a state actor.'" *Diamond*, 972 F.3d at 269–70 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)).

While "[o]n its face § 1983 admits no immunities," the Supreme Court has "consistently recognized that substantive doctrines of privilege and immunity may limit the relief available." *Tower v. Glover*, 467 U.S. 914, 920 (1984). Most notably, government officials are entitled to immunity from § 1983 liability where the "tradition of immunity was so firmly rooted in the common law and was supported by such strong policy reasons that Congress would have specifically so provided had it wished to abolish the doctrine." *Owen v. City of Independence*, 445 U.S. 622, 637 (1980) (internal quotation omitted). In *Wyatt v. Cole*, the Court refused to extend § 1983 immunity to private parties, finding the rationales supporting qualified immunity for government officials did not apply to private parties. 504 U.S. 158, 168 (1992). But the Court differentiated defenses to suit from immunity from suit. *Id.* at 166. Because "principles of equality and fairness may suggest" that "private citizens who rely unsuspectingly on state laws they . . . may have no reason to believe are invalid should have some protection from liability," the Court "[did] not foreclose the possibility" that private parties "could be entitled to an affirmative defense based on good faith and/or probable cause." *Id.* at

9

169.  Instead, the Court left open the question of a good faith defense "for another day."

*Id.*

We addressed this question in *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20

F.3d 1250 (3d Cir. 1994).  In *Jordan*, we held that private parties sued for monetary

damages under § 1983 are entitled to a subjective good faith defense if the court finds no

malice and no evidence the party knew or should have known "of the statute's

constitutional infirmity."  20 F.3d at 1276 (internal quotation omitted).  In *Diamond*,

Judge Rendell read *Jordan* to establish that this good faith defense is open to private-

party defendants as a categorical rule.  972 F.3d at 271. [3]  We agree a good faith defense

exists in this case for private party defendants who reasonably rely on both Supreme

Court precedent and state law.

The availability of a good faith defense is consistent with *Wyatt*, equitable

considerations, and the views of several of our sister circuits.  In *Wyatt*, the Court

explained

> [i]f parties seeking immunity were shielded from tort liability when Congress enacted the Civil Rights Act of 1871—§ 1 of which is codified at 42 U.S.C. § 1983—we infer from legislative silence that Congress did not intend to abrogate such immunities when it imposed liability for actions taken under color of state law.

504 U.S. at 164.

---

[3] Other circuits have read *Jordan* in this same manner.  *See, e.g.*, *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 942 F.3d 352, 362 (7th Cir. 2019) (*Janus II*) ("[*Jordan*] held that, while a private party acting under color of state law does not enjoy qualified immunity from suit, it is entitled to raise a good-faith defense to liability under section 1983.").

Accordingly, when determining whether Congress intended to confer immunity, the Court instructed us to look to the "most closely analogous torts" to see whether there was an immunity at common law. *Id.* Appellants encourage us to find this directive applies to determining "the elements or defenses to constitutional claims under § 1983" with respect to private party defendants. Appellants' Br. 31. But *Wyatt* only decided the proper inquiry to determine what immunities might be available to government officials. And we are not persuaded to apply the Court's historical immunity analysis to the separate question of a good faith defense, which the Court explicitly left open in *Wyatt*. *See Diamond*, 972 F.3d at 272. As Justice Kennedy acknowledged in *Wyatt*, the distinction between immunity and a defense is "important" and "fundamental." *Wyatt*, 504 U.S. at 173–74 (Kennedy, J., concurring). And the rationales, limitations, and legal bases for the doctrines are not interchangeable. *Danielson v. Inslee*, 945 F.3d 1096, 1100–01 (9th Cir. 2019). Accordingly, *Wyatt* does not appear to require us to apply the "most closely analogous tort" methodology to a good faith defense.[4]

Moreover, qualified immunity itself is no longer bound by a common law tort analogy. The Supreme Court has emphasized that it has "never suggested that the precise

---

[4] Even if we accepted Appellants' argument and looked to the most closely analogous tort, we would still find for Appellee. Like many of our sister circuits, we believe that abuse of process is the most analogous common law tort to a *Janus* First Amendment claim. *See Akers v. Md. State Educ. Ass'n*, 990 F.3d 375, 382 (4th Cir. 2021); *Ogle v. Ohio Civ. Serv. Emps. Ass'n, AFSCME Loc. 11*, 951 F.3d 797 (6th Cir. 2020); *Doughty v. State Emps. Ass'n of N.H., SEIU Loc. 1984*, 981 F.3d 128, 134 (1st Cir. 2020); *Janus II*, 942 F.3d at 365; *Danielson*, 945 F.3d at 1102. At common law, one accused of abuse of process was entitled to a good faith defense. *See Shaw v. Fulton*, 266 Mass. 189, 191 (1929); *Reay v. Butler*, 69 Cal. 572, 585 (Cal. 1886). Accordingly, even if we conducted a common-law tort inquiry, we would find Appellee is entitled to a good faith defense.

11

contours of official immunity can and should be slavishly derived from the often arcane rules of the common law." *Anderson v. Creighton*, 483 U.S. 635, 645 (1987). And as the Ninth Circuit observed in *Danielson*, the good faith defense is rooted in legitimate concerns about equality and fairness, "values that are inconsistent with rigid adherence to the oft-arbitrary elements of common law torts as they stood in 1871." 945 F.3d at 1101. Indeed, modern causes of action litigated in § 1983 cases often bear little resemblance to any 19th Century tort. We agree with the Ninth Circuit in finding it would be "neither 'equal' nor 'fair' for a private party's entitlement to a good faith defense to turn not on the innocence of its actions but rather on the elements of an 1871 tort that the party is not charged with committing." *Id.* at 1101–02.

Accordingly, we join a growing list of our sister circuits in recognizing a good faith defense for § 1983 private defendants who relied on then-controlling Supreme Court precedent and then-existing state law. *See Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 390–91 (6th Cir. 2020) ("Since *Wyatt*, a consensus has emerged among the lower courts that while a private party acting under color of state law does not enjoy qualified immunity from suit, it is entitled to raise a good-faith defense to liability under section 1983. It is not surprising then that the Seventh Circuit, the Ninth Circuit, and each of the District Courts to have considered the precise issue before us have all concluded that the good-faith defense precludes claims brought under § 1983 for a return of fair-share fees collected under the *Abood* regime." (cleaned up)); *Wholean v. CSEA SEIU Loc. 2001*, 955 F.3d 332, 335–36 (2d Cir. 2020); *Danielson*, 945 F.3d at 1101–02; *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 942 F.3d 352, 365 (7th Cir. 2019)

(*Janus II*).  We agree.  Because AFSCME relied in good faith on both *Janus* and 71 Pa.

Stat. Ann. § 575, it is entitled to a good faith defense.[5]

V.

We recognize a good faith defense here for § 1983 private defendants who

reasonably relied on then-controlling Supreme Court precedent and then-existing state

law.  Under this standard, Appellee is entitled to a good faith defense.  Accordingly, we

will affirm the judgment of the District Court.

---

[5] Appellants contend that even if a good faith defense exists, it is only a mechanism to defeat the elements of malice or probable cause in those constitutional claims in which malice or probable cause are elements.  They argue that since a *Janus* First Amendment claim does not contain these elements, there can be no good faith defense.  We are not persuaded by this argument.  An affirmative defense "need not relate to or rebut specific elements of an underlying claim."  *Wholean*, 955 F.3d at 336 (internal quotation omitted).

13